JANE GAFFNEY LAWING v. WILLIAM CRAIG LAWING

No. 8526DC993

(Filed 3 June 1986)

**1. Divorce and Alimony § 30— equitable distribution—objectionable evidence—presumptions**

Where evidence of similar import to that objected to came in elsewhere without objection, defendant lost the benefit of his objection; furthermore, defendant failed to show how, if at all, plaintiff's vague testimony affected the court's judgment, especially in light of the presumptions that the court relied only on competent evidence and that all property acquired during the marriage is marital property unless the contrary is shown by clear, cogent and convincing evidence.

**2. Divorce and Alimony § 30— equitable distribution—value of ring**

Where plaintiff valued a ring at $5,000, defendant valued it at $750, and no other evidence of value was introduced, plaintiff's affidavit clearly sufficed to support the trial court's finding that the ring was worth $5,000, and though the court selected the higher of two widely diverging values, it was not required to state its reasons.

**3. Divorce and Alimony § 30— equitable distribution—real estate as marital property—finding supported by evidence**

The trial court's finding that a particular piece of property was marital property was supported by the evidence that the parties stipulated to their ownership as 100% marital property of the parcel in question; defendant testified that he got the money to buy the property from a family business, but he did not specifically identify any particular withdrawals or transactions; defendant treated family businesses interchangeably with his personal finances; and defendant admitted signing a note on the property in question in his own name but did not testify that he signed in a representative capacity.

**4. Divorce and Alimony § 30— equitable distribution—stock as marital property—finding supported by evidence**

The trial court did not err in determining that certain shares of stock were marital property as opposed to being property of a family business, since the stock certificates bore only defendant's name and did not appear to have been issued to him in any representative capacity; other than the oral assertions of ownership of the parties, the only other evidence was from the family business's accountant, who testified orally that the stock was carried on the books of the business; neither records nor books of the corporation, nor tax returns showing dividend income received or intangibles tax paid were ever introduced; and corporate funds, if any, used to purchase the stock constituted compensation to defendant.

**5. Divorce and Alimony § 30— equitable distribution—valuation of stock—improper date**

The trial court in an equitable distribution action erred in valuing stock as of the date of trial instead of valuing it as of the date of separation.

**6. Appeal and Error § 16.1— additional assignment of error after settlement conference—authority of trial court to allow**

The trial court did not err in allowing defendant's addition of an assignment of error after the settlement conference, since the case had not been docketed in the appellate court; the trial court retained jurisdiction; and the assignment added no new evidentiary matter to the record.

**7. Divorce and Alimony § 30— equitable distribution—consideration of tax consequences not required**

The trial court was not required to consider the tax consequences of its order of equitable distribution, since consideration of tax consequences is always proper and may be advisable but is not automatically required.

**8. Divorce and Alimony § 30— equitable distribution—increases to separate property—distinction between active and passive increases**

Increases in value to separate property remain separate property only to the extent that the increases have been passive, as opposed to active appreciation resulting from the contributions of the parties during the marriage.

**9. Divorce and Alimony § 30— equitable distribution—shares in family business —appreciation as separate property—ruling improper**

The trial court erred in ruling that the entire appreciation in value of inherited shares in a family business was separate property, and the court should have made findings as to the value of the shares at the time of the inheritance and as of the date of the separation; it should have determined what proportion of that increase was due to funds, talent or labor which were contributed by the marital community as opposed to passive increases due to interest and rising value of land owned at inheritance; and it should have made a determination as to the efforts of a third person who took half of the inherited shares.

**10. Divorce and Alimony § 30— equitable distribution—certificate of deposit as separate property—clear, cogent and convincing evidence**

There was no merit to plaintiff's contention that defendant failed to produce sufficient clear, cogent and convincing evidence that a certificate of deposit was separate property to overcome the presumption that it was marital where the evidence tended to show that the certificate was titled to defendant alone; defendant testified at trial that the account represented by the certificate was funded solely out of his mother's estate; and plaintiff contended in her affidavit that the certificate was marital but admitted at trial that she did not know where the funds came from.

**11. Divorce and Alimony § 30— equitable distribution—limitation on court's authority to make distributive award**

A court's authority to make distributive awards is limited and a court may not enter a distributive award which will be treated as ordinary income under the Internal Revenue Code.

**12. Divorce and Alimony § 30— cash payments under distributive award—award unaffected by death of parties—payments not alimony**

Periodic payments of cash over 18.3 years pursuant to the court's distributive award were not alimony under the Internal Revenue Code and

were not includable in plaintiff's gross income and taxable to her, since one of the tests to determine whether payments are alimony is whether the payments must be terminable at the death of the recipient, but the judgment in this case was unaffected by the death of either spouse.

**13. Divorce and Alimony § 30— distributive award—period limited to six years**

  N.C.G.S. § 50-20(b)(3) authorizes the court to make distributive awards for periods of not more than six years after the date on which the marriage ceases, except upon a showing by the payor spouse that legal or business impediments or some overriding social policy prevent completion of the distribution within the six-year period, and awards for periods longer than six years, if necessary, should be crafted to assure completion of payment as promptly as possible in order to serve both statutory goals: affording the recipient's share non-recognition treatment under the Internal Revenue Code, and fairly wrapping up the marital affairs as quickly and certainly as possible. Therefore, the trial court erred in entering a distributive award requiring periodic payments of cash over 18.3 years in the absence of a showing of legal or business impediments.

APPEAL by plaintiff and defendant from *Brown (L. Stanley), Judge.* Judgment entered 31 January 1985 in District Court, MECKLENBURG County. Heard in the Court of Appeals 11 February 1986.

Plaintiff wife and defendant husband were married in 1943 and divorced in July 1984. They had two children, both of whom are now adults. The principal support for the family during the marriage came from various family businesses. These included Lawing Auction Co. ("LAC"), a partnership with defendant and his brother Plato as 50% general partners, and Lawings, Inc. ("LINC"), in which defendant held 48% of the shares, plaintiff 6%, and Plato the remainder. Both parties worked in these businesses; during the 21 years defendant served in the General Assembly, plaintiff assumed most of the responsibility for daily management of the businesses during legislative sessions.

In 1983 plaintiff sued for divorce from bed and board, temporary and permanent alimony, attorney fees, and equitable distribution. The parties stipulated that grounds existed entitling plaintiff to alimony. By consent order in March 1984, the court determined that plaintiff was a dependent spouse and ordered payment of alimony pendente lite and attorney fees, and directed that plaintiff would continue to have possession of the family residence. In July 1984, the parties were granted an absolute divorce based on one year's separation.

The equitable distribution claim came on for hearing in August 1984. The court entered a judgment finding a net value of marital property of $1,142,223. The court determined that an equal distribution of this property would be equitable, and ordered division and distribution accordingly. Both parties appealed. Settlement conference procedures failed and the case was duly filed and docketed here.

*Helms, Mullis & Johnston, by W. Donald Carroll, Jr. and Catherine E. Thompson, for plaintiff.*

*Walker, Palmer & Miller, by James E. Walker and H. Irwin Coffield, III, for defendant.*

EAGLES, Judge.

These appeals raise a number of questions. The judgment represents for the most part a fair and sound resolution of the issues, but there are errors which require that the case be remanded.

## STANDARD OF REVIEW

We presume that the proceedings in the trial court are correct until shown otherwise. *Phelps v. McCotter*, 252 N.C. 66, 112 S.E. 2d 736 (1960). Where the record is silent on a particular point, we presume that the trial court acted correctly. *Dobbins v. Paul*, 71 N.C. App. 113, 321 S.E. 2d 537 (1984). The party asserting error must show from the record not only that the trial court committed error, but that the aggrieved party was prejudiced as a result. G.S. 1A-1, R. Civ. P. 61; *Medford v. Davis*, 62 N.C. App. 308, 302 S.E. 2d 838, *disc. rev. denied*, 309 N.C. 461, 307 S.E. 2d 365 (1983).

The General Assembly has committed the distribution of marital property to the discretion of the trial courts, and the exercise of that discretion will not be disturbed in the absence of clear abuse. *White v. White*, 312 N.C. 770, 324 S.E. 2d 829 (1985). Accordingly, the trial court's rulings in equitable distribution cases receive great deference and may be upset only if they are so arbitrary that they could not have been the result of a reasoned decision. *Id.* The trial court's findings of fact, on which its exercise of discretion rests, are conclusive if supported by any competent evidence. *Humphries v. City of Jacksonville*, 300 N.C.

186, 265 S.E. 2d 189 (1980). The mere existence of conflicting evidence or discrepancies in evidence will not justify reversal. *Coble v. Richardson Corp.*, 71 N.C. App. 511, 322 S.E. 2d 817 (1984). Finally, formal errors in an equitable distribution judgment do not require reversal, particularly where the record reflects a conscientious effort by the trial judge to deal with complicated and extensive evidence. *Andrews v. Andrews*, 79 N.C. App. 228, 338 S.E. 2d 809 (1986). With these general considerations in mind, we turn to the individual assignments of error.

DEFENDANT'S ASSIGNMENTS OF ERROR

I

[1] In his first assignment of error, defendant argues that the court erroneously admitted plaintiff's testimony that "he [defendant] probably intended [business purchases of property] to be investments for he and I because he and I had done more to keep the [family] businesses going." Defendant himself testified later, in response to a question about investments for the family, that any enhancement in value of the family businesses would be for the benefit of the family. Where, as here, evidence of similar import to that objected to comes in elsewhere without objection, the objecting party loses the benefit of its objection. *State v. Tysor*, 307 N.C. 679, 300 S.E. 2d 366 (1983); 1 H. Brandis, N.C. Evidence Section 30 (1982). Further, defendant has not shown how, if at all, plaintiff's vague testimony affected the court's judgment. *Wood-Hopkins Contracting Co. v. N.C. State Ports Authority*, 284 N.C. 732, 202 S.E. 2d 473 (1974). This is especially important in light of the presumptions (1) that the court relied only on competent evidence, *id.*, and (2) that all property acquired during the marriage is marital property, unless the contrary is shown by clear, cogent and convincing evidence. *Loeb v. Loeb*, 72 N.C. App. 205, 324 S.E. 2d 33, *cert. denied*, 313 N.C. 508, 329 S.E. 2d 393 (1985). This assignment is overruled.

II

[2] Defendant next assigns error to the court's valuation of a ring. Following the local practice, both sides introduced affidavits listing what they contended was the marital personalty with each item's value. Plaintiff valued the ring, which the court awarded to defendant, at $5,000; defendant valued it at $750. No other evi-

dence regarding the ring was introduced. The court gave it a value of $5,000, which defendant now contends was error.

Under the "any competent evidence" standard, plaintiff's affidavit sufficed to support the trial court's finding as to the ring's value. *Humphries v. City of Jacksonville, supra.*

Defendant argues that since the trial court selected the higher of two widely diverging values, it should have stated its reasons. He cites only *In re Wolfe*, 202 Mont. 454, 659 P. 2d 259 (1983) which is clearly distinguishable. There, where independent professional appraisers, one for each side, valued land at $1.6 and $1.2 million, the trial court erred in adopting without explanation the landowning husband's conclusory valuation of $450,000. This court has held that in certain situations the trial court must indicate its valuation method(s). *Poore v. Poore*, 75 N.C. App. 414, 331 S.E. 2d 266 (professional practice), *disc. rev. denied*, 314 N.C. 543, 335 S.E. 2d 316 (1985); *but see Patton v. Patton*, 78 N.C. App. 247, 337 S.E. 2d 607 (1985) (Hedrick, C.J., dissenting) (valuation of corporation). However, this rule has not been applied to personal effects and household property previously and we decline to do so here.

We note that the finding excepted to is one of some 120 individual findings as to household items including such things as "1 lamp (green): Net FMV as of 6/19/1983 $15.00," "5 cats: . . . $25.00," "1 telescope: . . . $8.95," etc. Values for each item were asserted in long lists as part of each party's affidavits. It appears that in large measure the trial court adopted plaintiff's valuations, resolving any questions of witness credibility aided by extensive oral testimony by both parties. In the absence of evidence that plaintiff's valuation of the ring and her valuations of personalty generally were inherently incredible, defendant cannot now complain to this Court about the trial court's decision to accept plaintiff's valuation as to this one item. We therefore overrule this assignment.

## III

Defendant's next question concerns various findings that certain property was marital. Defendant contends that the property in question was acquired through the family businesses, and the court either (1) incorrectly found that it belonged to the marital

economy or (2) awarded specific property to plaintiff that the court elsewhere found was an asset of the businesses, erroneously giving plaintiff a double benefit. We note again the "any competent evidence" standard of review and the dual presumptions that the judgment is correct and that property is marital.

A

In his arguments on this question defendant relies in part on the following finding of fact:

> The Court notes that a number of items of property, particularly real property, which were listed by the parties in their various exhibits, including their original equitable distribution affidavits, as marital property, are not found herein by the Court as either items of marital property or as items of either the plaintiff's or the defendant's separate property. The Court finds that the items so omitted are neither marital nor the separate property of either party. The reason that most of these items are not so included is because, as appears of record, both parties agreed, the plaintiff's agreement coming in the form of a concession during final argument of counsel, that the parcels of real property so omitted are owned by one of the two business entities distributed herein to the defendant.

This finding, argues defendant, leaves ambiguous what property the court treated as marital property and what it valued as part of the assets of the businesses, allowing plaintiff a double recovery.

One of our roles in reviewing findings of fact is to reconcile apparently inconsistent findings and uphold the judgment when practicable. *Davis v. Ludlum*, 255 N.C. 663, 122 S.E. 2d 500 (1961); *Spencer v. Spencer*, 70 N.C. App. 159, 319 S.E. 2d 636 (1984). We presume the correctness of the judgment. We can readily reconcile the quoted finding with the court's specific findings regarding marital property: the court in making findings with respect to specific property obviously found that it was not an asset of the businesses; the quoted finding relates only to *other* property, the residue not treated specifically elsewhere in the judgment.

B

The record contains a "Summary of the Parties' Stipulated Positions" signed by plaintiff's attorneys. Defendant did not dispute the assertion made at trial that he had stipulated as outlined in the summary (claiming instead that he stipulated erroneously under pressure of time), and the court relied on the summary in the judgment. The record on appeal contains no objection by defendant to the inclusion of the summary in the record. Accordingly we conclude that the summary of stipulations is what it purports to be. *See Asheville Woodworking Co. v. Southwick*, 119 N.C. 611, 26 S.E. 253 (1896) (appellate court will not disturb trial court's ruling on what records of trial court contain). *Compare Hall v. Lassiter*, 44 N.C. App. 23, 260 S.E. 2d 155 (1979) ("stipulation" not signed by both parties treated as "notice"), *disc. rev. denied*, 299 N.C. 330, 265 S.E. 2d 395 (1980).

A stipulation, once made and of record, is binding on the parties in the absence of fraud or mutual mistake. Therefore, in our review of these assignments of error, we treat the facts stipulated to in the summary as established.

C

[3] Turning to the specific items of property in question, defendant first contends that the court erroneously identified investment property in McCain, North Carolina ("McCain property") as marital property and erred in including it separately in the list of marital property, when it was actually property of LAC. The summary of stipulations indicates that the parties "stipulated to their ownership as 100% marital property of two parcels," including the McCain property. In a separate stipulation, *not* including the McCain property, the parties agreed on the value of other real property but noted that plaintiff contended that this other property was owned by the parties while defendant contended it was owned by LAC. These stipulations together support a finding that the McCain property was owned by the parties and was marital property.

Defendant testified that he got the money for the property from LAC, but he did not specifically identify any particular withdrawals or transaction(s). It appears that defendant treated the family businesses interchangeably with his personal finances

and did not maintain the kind of careful separation he now claims existed. (In fact Plato Lawing testified that he had brought suit to have title to some property transferred from defendant to the businesses.) Defendant admitted signing a note on the McCain property in his own name, but did not testify that he signed in a representative capacity. We conclude that the court's findings that the McCain property was marital property were supported by the record.

Defendant also attempts to argue under this assignment that the court erroneously included the McCain property in the marital estate twice, once standing alone and once as an asset of LAC. Defendant excepted to the finding that the McCain property was marital property, and we have found that finding properly supported. He did not except to the court's valuation of LAC. Review here is confined to consideration of exceptions properly set out in the record. App. R. 10(a); *Midgett v. Midgett*, 5 N.C. App. 74, 168 S.E. 2d 53, *cert. denied*, 275 N.C. 595 (1969). Whether the trial court erred in valuing LAC, and whether included in that value is the McCain property, is not properly before us.

D

[4] Defendant next assigns error to the court's finding that 2,000 shares of North Carolina Federal Savings & Loan and 9,332 shares of Preferred Savings & Loan were marital property, as opposed to being property of LINC. The stock certificates in the record bear only defendant's name, however, and do not appear to have been issued to him in any representative capacity. This was some evidence that they were not property of LINC. *See* G.S. 25-8-308 ("appropriate person"); G.S. 55-17(b)(5) (corporation may hold stock in its own name); *Corporation Comm. v. Harris*, 197 N.C. 202, 148 S.E. 174 (1929) (presumption of ownership from registration). Other than the oral assertions of ownership of the parties, the only other evidence was from LINC's accountant, who testified orally that the stock was carried on the books of LINC. Neither records nor books of the corporation, nor tax returns showing dividend income received or intangibles tax paid, were ever introduced. The record contains no current balance sheet of LINC. There is evidence from which the court could properly find that this stock belonged to defendant, not to LINC, and was presumed to be marital property.

Defendant argues that the stock was paid for out of corporate funds and was therefore corporate property, regardless of title. We are aware that we have adopted a "source of funds" rule in other equitable distribution cases. *McLeod v. McLeod*, 74 N.C. App. 144, 327 S.E. 2d 910, *cert. denied*, 314 N.C. 331, 333 S.E. 2d 488 (1985); *Wade v. Wade*, 72 N.C. App. 372, 325 S.E. 2d 260, *disc. rev. denied*, 313 N.C. 612, 330 S.E. 2d 616 (1985). Here there is no dispute that, to the extent that monies were diverted from LINC to the ownership of the parties, they were marital property. The "source of funds" theory does not really apply, since defendant simply disputes legal ownership. Defendant dominated LINC, and shifted funds at will among family businesses and his marriage with frequency and with little accountability. He admitted that the family businesses provided for the family's personal needs. In the absence of compelling evidence to the contrary, the court implicitly found, and we agree that the corporate funds, if any, used to purchase the stock constituted compensation to defendant. In *McLeod v. McLeod, supra*, we rejected a contention that only the salary of the head of a closely held corporation was subject to equitable distribution, because of the corporate head's substantial ability to control how and in what form payments were made. The same logic applies here.

Defendant again argues that the court's findings allow the value of the stock to be considered twice, once individually and once as an asset of LINC. Since he failed to except to the court's valuation of LINC, the question is not before us. According to the summary of stipulations, the agreed value of LINC was as found by the court, and the stock was treated separately elsewhere in the stipulations and the judgment. We find no error in the findings. These assignments are overruled.

E

Defendant next attacks the court's finding that a 1978 Lincoln automobile was marital property. The automobile was titled in defendant's name, without indication of any representative capacity. Defendant nevertheless contends that it was property of LINC, since it was paid for by that entity. For the reasons discussed concerning the stock, we overrule this assignment. Additionally, we note that under our motor vehicle laws the registra-

tion established prima facie defendant's ownership. G.S. 20-71.1; G.S. 20-4.01(26).

### F

Defendant next assigns error to the determination that a promissory note was 100% marital property. The note was identified in the parties' affidavits. Plaintiff contended it was 100% marital property; defendant, consistent with his present contention that it was property of LINC, contended it was only 54% marital. The note itself was not introduced nor were its terms mentioned in the testimony, though defendant does not deny its existence. There was evidence of the note's existence and sufficient evidence to support the court's finding. *Humphries v. City of Jacksonville, supra.*

### IV

The next assignment of error brought forward by defendant concerns the valuation of several properties. The stipulated date of valuation, in accordance with the statute, was the date of separation. G.S. 50-21(b). The proper value for equitable distribution purposes is the "net value," the market value less the amount of any encumbrances serving to offset or reduce market value. G.S. 50-20(c); *Alexander v. Alexander*, 68 N.C. App. 548, 315 S.E. 2d 772 (1984).

### A

Defendant argues that the court erred in valuing the McCain property at the offering price less the amount of a note secured by the property. He points to his own testimony regarding the diminished prospects for sale of the property, contending that the court erred in not taking this into account in valuation, since the offering price merely represented an initial negotiating position. It is true that mere offers to purchase or sell are not generally competent as evidence of value. *See N.C. State Highway Comm. v. Helderman*, 285 N.C. 645, 207 S.E. 2d 720 (1974). However, where the offer constitutes an admission against interest, operating against the landowner's or offeror's contended value, the rule has been relaxed. *Id.* (allowing in evidence of low offers to impeach landowner's contended high value in condemnation action); *see generally* Annot. 25 A.L.R. 4th 983 Section 6 (1983) (col-

lecting cases). In these circumstances, absent objection by defendant and given the self-serving and unsupported nature of his testimony, we conclude that the court did not err in using the offering price as evidence of the value of the McCain property. In addition, we note that the summary of stipulations contains an agreed "equity" (sale price minus debt) in the property in excess of what the court found as its value. We therefore overrule this assignment.

### B

Defendant next contends that the court erred in valuing the promissory note discussed earlier. He argues that the court erred in finding that the note had a value of $36,000 when that amount was receivable over a ten-year period. Defendant contends that his notation "total value to be received over 10-year period" meant that the $36,000 value must be discounted for future payment, yielding a lower net current fair market value. Plaintiff responds that her affidavit, stating "current fair market value: present value at 8% over 9 years $36,900" indicates that the discount had already been figured in. This was the sum of the evidence on this issue. There was some substantial evidence in plaintiff's affidavit to support the finding. Her statement as to the current market value was express and definite; defendant's must be implied. The assignment is therefore overruled.

### C

[5] Defendant next argues that the court erroneously valued stock of Preferred Savings & Loan as of the date of trial, as opposed to the correct valuation date as the date of separation. G.S. 50-21(b). It appears that the court did select the wrong valuation date for these shares of stock: the summary of stipulations clearly indicates that the value as of the date of separation was as contended by defendant, a difference of about $20,000. This was error and must be corrected on remand.

### D

Finally, defendant contends that the court improperly valued the 1978 Lincoln automobile discussed earlier. It is not clear whether the parties stipulated to its value. Plaintiff's affidavit assigned the automobile a value of $5,000. Defendant testified that it was worth about twenty-five hundred dollars. He testified

that plaintiff had left the car for him to drive because she thought it was "falling apart," but also that he still drove it. No other evidence of the Lincoln's value came before the court. While evidence for either side was not strong, the question was simply one of credibility. The trial court did not err in adopting plaintiff's contended value.

E

Other than the error in valuation of the Preferred Savings & Loan stock, we conclude that no error has been shown by defendant with respect to the valuation of the marital property.

V

Defendant next argues that the court erred in finding that neither party presented evidence of tax consequences of equitable distribution and that the court could therefore make no findings with respect thereto. This argument is based on an assignment of error added after the settlement conference.

A

[6] We first address plaintiff's argument that it was error to allow defendant to add the assignment in the first place. Since the record on appeal had already been settled, she argues, she was denied due process by the addition of the new assignment without a chance to include in the record evidence relevant to the new legal issue.

The general rule is that an appeal takes the case out of the jurisdiction of the trial court; the trial court does retain jurisdiction for the purpose of settling the case on appeal. *Bowen v. Hodge Motor Co.*, 292 N.C. 633, 234 S.E. 2d 748 (1977). Until the case has been docketed in the appellate court, the appellate court does not formally acquire jurisdiction over the record. *See Avery v. Pritchard*, 93 N.C. 266 (1885). As plaintiff conceded at argument, the trial court had jurisdiction over the record when the amendment was made. The assignment added no new evidentiary matter to the record, and was properly allowed to be included.

B

[7] Defendant argues that G.S. 50-20(c)(11) required that the court consider the tax consequences of its order of equitable dis-

tribution, and that the court's admitted failure to make findings relative to tax consequences constituted reversible error. An equal division is presumptively equitable. *White v. White, supra.* Therefore, the factors listed in G.S. 50-20(c) need not be expressly considered in ordering an equal division, *Loeb v. Loeb, supra,* but are particular matters to be proved and considered where it is contended that an unequal division is more equitable. *White v. White, supra; see Andrews v. Andrews, supra* (comparing factors with universal factors in G.S. 50-16.5). The court's finding was not erroneous for failure to comply with G.S. 50-20(c).

## C

Defendant relies on *Clark v. Clark,* 301 N.C. 123, 271 S.E. 2d 58 (1980) for his contention that for failure to consider tax consequences the judgment is unrealistic and unjust. In *Clark,* the Supreme Court considered a dependent spouse's contention that an alimony award was erroneous because the trial court failed to consider the fact that alimony would be taxable income. The court held that tax consequences of awards would be a proper consideration and should not be ignored. 301 N.C. at 132-33, 271 S.E. 2d at 66. It nevertheless stopped short of holding that in every case tax consequences must be considered, and in fact affirmed the disputed portion of the order, which contained no findings regarding tax consequences. *Clark* was decided under G.S. 50-16.5, which requires consideration of universal factors which might be construed to include taxes, *e.g.* earnings or estates.

We have reviewed the authority of other jurisdictions cited by defendant. They appear generally to adopt the position taken in *Clark,* namely that consideration of tax consequences is always proper and may be advisable, but is not automatically required. Annot., 51 A.L.R. 3d 461 Section 3 (1973); *see also Bennett v. Bennett,* 15 Mass. App. 999, 448 N.E. 2d 77 (1983) (no request for tax findings, no consideration in judgment; affirmed). *Clark* does not require that we find error.

## D

We now consider whether the evidence before the court presented the tax questions sufficiently to trigger the court's fact finding role. The trial court must consider all the competent evidence relevant to the issues before it. *Hodges v. Hodges,* 257

N.C. 774, 127 S.E. 2d 567 (1962). When competent evidence point-ing to the existence of a fact is before the court, it is error to find that no evidence on that issue was introduced. *Long v. Long,* 71 N.C. App. 405, 322 S.E. 2d 427 (1984).

In this voluminous record the only evidence regarding pos-sible tax consequences (and the only evidence relied on by defend-ant), came following examination of his accountant about the net value of business property. The accountant testified:

Q [By plaintiff's attorney Carroll]: The book values that you've given, they include the real estate at its cost basis, do they not?

A: Yes, sir.

Q: And some of that property was purchased going back into the 50's and 60's; is that correct?

A: In the 60's. Now, if I may respond to that. One of the problems that you have with a corporation, it's easy to say that the appraised value of this is such and such an amount, and the difference between the two is a gain, but it's really not because in order to get that gain, you have to—the cor-poration has to pay the tax in order to accomplish that gain. So sometimes if you look here and you see a tax appraisal, that's what you may have if everything was liquidated out in cash and there were no taxes to pay. But once you put a tax effect on here, that's why we don't do things at appraised values. But in order to get that, somebody's going to have to pay the tax, and it's going to be substantially less than this assuming that these are the net realizable value.

MR. CARROLL: I have no further questions. [Witness ex-cused.]

This evidence at most simply stated a general principle of tax law, that tax must be paid on gain realized at sale. It did not suggest any specific consequences of any possible award, unless it is assumed that the corporation would have to be sold to satisfy the equitable distribution award. To the extent that the evidence addressed the value of the family businesses, it had little if any probative value. Since defendant failed to except to the findings regarding the value of the businesses, any error was harmless.

From a strictly technical viewpoint, the court's finding that no evidence as to tax consequences was introduced may have been erroneous. As a practical matter, the court undoubtedly found that no helpful evidence was before it. We agree, and hold that the error, if any, was not prejudicial.

## VI

With the exception of the one incorrect valuation date for the Preferred Savings & Loan stock, we have found no prejudicial error as to each of defendant's assignments of error and overrule them. In addition we find no error as to plaintiff's assignment regarding the amendment to the record.

### PLAINTIFF'S APPEAL

### I

When LINC was originally formed, defendant, Plato and their father each owned 32 shares (32%) of its stock, and plaintiff owned 4 shares (4%). Defendant and Plato each inherited 16 shares from their father at his death in 1963. At that time LINC had a value of about $13,300, or $133 per share. At the valuation date here, LINC was worth $1,000,000, or $10,000 per share. Plaintiff claimed that the appreciation or increase in value of the 16 shares inherited by defendant from his father was marital property. The court found that she had no interest in the appreciation in value, and plaintiff assigns error. Neither side questions the finding that the shares themselves were separate property, nor is there any real dispute that plaintiff made substantial contributions to the corporation, both directly and indirectly. The only question is the "separate property" designation of the appreciation of the inherited shares.

### A

[8] This Court has recently addressed questions of this type in applying G.S. 50-20(b)(2), under which inherited property is separate property and increases in value of separate property are also separate property. In each case we have held that increases in value remained separate property only to the extent that the increases were passive, as opposed to active appreciation resulting from the contributions of the parties during the marriage. *McLeod v. McLeod, supra; Phillips v. Phillips, supra; Wade v.*

*Wade, supra.* This rationale should apply here. We are aware that our opinion in the first of these cases, *Wade,* was certified 25 February 1985, and that the hearing in the instant case took place in August 1984, judgment being filed 31 January 1985 and notice of appeal being given 8 February 1985. Decisions are generally presumed to apply retroactively to other pending appeals, absent compelling justification to the contrary. *State v. Rivens,* 299 N.C. 385, 261 S.E. 2d 867 (1980); *State v. Funderburk,* 56 N.C. App. 119, 286 S.E. 2d 884 (1982). Accordingly, we hold that the *Wade-Phillips-McLeod* rule applies here.

B

Plaintiff urges that we apply *McLeod* and *Phillips* to the *entire* appreciation in value. She relies on her evidence that she and defendant ran the corporation, defendant's statements that Plato did not have a real share in business decisions, and defendant's dominance in handling business finances. She contends that this total control by the parties means the entire appreciation should have been designated marital property. Plato testified however that he had an equal share in running the business, and defendant's later statements agree with Plato. On this record the court could properly find that some part of the appreciation in value was due to the efforts of Plato Lawing. For the purposes of evaluating the contributions to the marital economy for equitable distribution, *see Hinton v. Hinton,* 70 N.C. App. 665, 321 S.E. 2d 161 (1984), we see no difference between "passive" increases in separate property (interest, inflation) and "active" increases brought about by the labor of third parties for whom neither spouse has responsibility. The court therefore correctly rejected plaintiff's contention that she was entitled to marital treatment of the entire increase in value of the inherited stock.

C

Nevertheless it would be contrary to the spirit of the Equitable Distribution Act and our decisions in *McLeod* and *Phillips* to hold that simply because a third party worked with plaintiff and defendant in a closely-held corporation, all increase in value automatically is exempted from treatment as marital property. Although the owner of separate shares was treated as the sole owner in *Phillips,* the presence of some minimal (2%) third party involvement did not preclude treatment of corporate appreciation

during the marriage as marital property. Other states have generally recognized "active" appreciation of fractional interests in corporations as marital property, even though the underlying shareholder interest was separate property. *See Hoffmann v. Hoffmann*, 676 S.W. 2d 817 (Mo. 1984) (29.5% interest was separate, but increase of value during marriage would be marital to extent claimant could prove value of separate owner's services to corporation; proof failed, however); *Nolan v. Nolan*, 107 A.D. 2d 190, 486 N.Y.S. 2d 415 (1985) (spouse quit job to manage separate securities full time; some portion of increase in value marital property; remanded for findings).

## D

Here the entire appreciation in value of the inherited shares was clearly identified for the trial court. The portion of the appreciation attributable to the active efforts of the parties was property "acquired" during the marriage. *McLeod; Phillips; Wade.* It therefore was presumably marital in nature. *Loeb.* The only evidence regarding the appreciation was that sketchy evidence discussed above: that evidence did not rebut the presumption of marital property, but only plaintiff's claim to the entire appreciation.

## E

[9]   We therefore hold that the court erred in ruling that the *entire* appreciation in value of these separate shares was separate property. We remand for a determination of the proportion of the appreciation that may properly be classified as marital property. *McLeod v. McLeod, supra.* The court should make findings as to the value of the shares at the time of the inheritance and as of the date of valuation. It then should determine what proportion of that increase was due to funds, talent or labor that were contributed by the marital community, *id.,* as opposed to passive increases due to interest and rising land value of land owned at inheritance, and the efforts of Plato. We recognize that we cannot require mathematical precision in making this determination. *See Poore v. Poore, supra* (valuing goodwill of business). Nevertheless, the trial court must make a reasoned valuation, identifying to the extent possible the factors it considered. *Id.*

## II

**[10]** Plaintiff's second assignment concerns a certificate of deposit valued at $78,000 which the court found was separate property of defendant. Plaintiff contends that defendant failed to produce sufficient "clear, cogent, and convincing" evidence that the certificate was separate to overcome the presumption that it was marital. *Loeb v. Loeb, supra.* Plaintiff conceded in oral argument that this question turns solely on the sufficiency of the evidence. There is no dispute in the record that this property was acquired during the marriage, so the *Loeb* presumption does apply.

### A

What constitutes "clear, cogent and convincing" evidence is a difficult question. *In re Webb*, 70 N.C. App. 345, 320 S.E. 2d 306 (1984) (Becton, J., dissenting), *aff'd*, 313 N.C. 322, 327 S.E. 2d 879 (1985). Once substantial evidence is before the finder to support a finding of fact, whether that evidence reaches the level necessary to support a finding under the appropriate standard is a weighing function resting essentially with the finder of fact. *In re Caldwell*, 75 N.C. App. 299, 330 S.E. 2d 513 (1985). We traditionally have hesitated to disturb the fact finder's decision that the evidence is clear, cogent, and convincing.

Moreover, it is well established that the finder of fact is free to believe or disbelieve the testimony of witnesses in whole or in part, and even to believe that a witness testified truthfully as to one particular and untruthfully as to another. *State v. Foster*, 293 N.C. 674, 239 S.E. 2d 449 (1977).

### B

The court found that the certificate was separate property. The record does not reflect what standard of evidence the court applied. Plaintiff does not argue that the finding was erroneous because it was made under the wrong evidentiary standard, but only that the evidence itself did not meet the *Loeb* clear, cogent and convincing standard. Under the "silent record" rule, we presume that the court applied the proper evidentiary standard. *Dobbins v. Paul, supra*; App. R. 10(a). *Loeb* was decided 2 January 1985, and the judgment in this case was signed and filed on 31

January 1985, four weeks later. We presume that the trial court was aware of, and applied, the law as set forth in *Loeb*.

## C

Defendant bore the burden of proving that the certificate was his separate property. *Loeb.* The certificate appears to have been titled to defendant alone. In his affidavit filed before trial defendant proposed that this certificate be divided equally, but the summary of stipulations reflects that he contended that it was separate property. Defendant testified at trial that the account represented by the certificate was funded solely out of his mother's estate. Plaintiff contended in her affidavit that the certificate was marital, but admitted at trial that she did not know where the funds came from. She admitted that defendant's mother's heirs maintained a separate account for income from her estate. There was equivocal evidence from defendant regarding his intention and knowledge at the time he first proposed that the certificate be divided equally. From this evidence, we conclude that the trial court could and did correctly find that this certificate was separate property of defendant. The trial court apparently accepted defendant's specific trial testimony on this issue, disregarding the equivocal evidence presented elsewhere and giving the specific evidence the necessary weight. This was within its power, and we will not disturb its finding. *McManus v. McManus*, 76 N.C. App. 588, 334 S.E. 2d 270 (1985).

## III

Plaintiff's final assignment of error involves the distributive award ordered by the court. The court valued the marital property and determined that 50% of that value was $571,000. The court awarded property worth approximately $816,000 to defendant and $326,000 to plaintiff. The court ordered defendant to pay half the difference, $245,000, as a "distributive award," by paying $25,000 immediately and the remainder in installments of $1,000 per month, plus interest at 8% per annum on the balance, over the next 220 months, or 18.3 years. Plaintiff's principal argument is that this distributive award is contrary to the statutory definition and authorization, and that it inequitably makes her dependent on defendant over an inordinately lengthy period.

Lawing v. Lawing

## A

The trial court had authority to make a distributive award under G.S. 50-20(e):

> In any action in which the court determines that an equitable distribution of all or portions of the marital property in kind would be impractical, the court in lieu of such distribution shall provide for a distributive award in order to achieve equity between the parties. The court may provide for a distributive award to facilitate, effectuate or supplement a distribution of marital property. The court may provide that any distributive award payable over a period of time be secured by a lien on specific property.

The statute clearly recognizes that the court may make the distributive award payable over an extended period. Since G.S. 50-20(e) does not limit the duration of the time period for payment, nothing else appearing, the structure and timing of payment of the award would rest with the discretion of the trial judge. *See Andrews v. Andrews, supra.*

[11] There are, however, other relevant statutory provisions. According to G.S. 50-20(b)(3), " 'Distributive award' means payments that are payable either in a lump sum or over a period of time in fixed amounts, *but shall not include payments that are treated as ordinary income to the recipient under the Internal Revenue Code.*" (Emphasis added.) The emphasized language suggests, and plaintiff contends, that a North Carolina court may only make distributive awards payable over periods that will not subject the distributive payments to treatment as ordinary income under the United States Internal Revenue Code ("the Code" or "I.R.C."). We note that in enacting the equitable distribution statute, the General Assembly intended to avoid taxable events which would chill the use of equitable distribution. *See* Comment, Equitable Distribution — The Tax Effects of North Carolina's Equitable Distribution Statute, 18 Wake Forest L. Rev. 555, 565 (1982). We therefore hold that a court's authority to make distributive awards is limited and that a court may not enter a distributive award that will be treated as ordinary income under the Internal Revenue Code.

B

[12]   We look to the Code to determine whether the 18.3 year period for payment of the award makes its installments taxable as ordinary income to plaintiff, the recipient. Under the tax law as it existed in 1984, periodic payments of cash over 18.3 years under a decree of divorce would constitute alimony, and would be includable in plaintiff's gross income under former I.R.C. Section 71.

The applicable law was substantially revised effective for judgments and other instruments executed after 31 December 1984. 98 Stat. 798, Pub. Law 98-369, Section 422(e)(1) (1984). The new tax provisions for alimony and property transfers reflect a legislative intent to reduce the number of taxable events incident to divorce. House Ways & Means Comm., Deficit Reduction Act of 1984, H. Rep. No. 98-432, Pt. II, 98th Cong., 2d Sess., *reprinted in* 1984 U.S. Code Cong. & Ad. News: Legislative History 697, 1134-37. To qualify as alimony under the new I.R.C. Section 71, payments must meet certain tests. One test designed to *prevent* the deduction of payments as alimony when the payments are "in effect transfers of property unrelated to the support needs of the recipient," H. Rep. No. 98-432, *supra* at 1138, is that to be treated as alimony the payments must be terminable at death of the recipient. I.R.C. Section 71(b)(1)(D). The present judgment is not so limited: its direction is absolute and unaffected by the death of either spouse. Accordingly, the periodic payments are not alimony under the Code and are not includable in plaintiff's gross income and taxable to her under I.R.C. Section 71. (There is no conflict with North Carolina law on this issue, as our statute expressly follows the Code. G.S. 105-141.2.)

C

The periodic payments are not alimony; it appears instead that they constitute a transfer incident to divorce governed by new I.R.C. Section 1041, enacted by 98 Stat. 793-94, Pub. Law 98-369, Section 421 (1984). I.R.C. Section 1041 was intended to have broad application to interspousal transfers of all types of property, including cash, in order to provide uniform federal tax treatment despite conflicting state property laws. H. Rep. No. 98-432, *supra* at 1135. Section 1041 provides that no gain or loss shall be recognized for transfers to "a former spouse, but only if

the transfer is incident to the divorce." I.R.C. Section 1041(a)(2). If no gain or loss is recognized on a transfer, the payments to the recipient are not treated as ordinary income. *See Badgett v. United States*, 175 F. Supp. 120 (W.D. Ky. 1959) (theory of non-recognition discussed); G.S. 105-145(d1) (transfers incident to divorce treated as under Code).

Since equitable distribution only occurs following divorce, G.S. 50-21(a); *Lofton v. Lofton*, 71 N.C. App. 635, 322 S.E. 2d 654 (1984), the transferee spouse will always be a "former spouse," and I.R.C. Section 1041(a)(2) applies. "For purposes of subsection (a)(2), a transfer of property is incident to the divorce if such transfer — (1) occurs within 1 year after the date on which the marriage ceases, or (2) is related to the cessation of the marriage." I.R.C. Section 1041(c). Since performance of the long-term payment provisions of this judgment will occur more than one year after the date on which the marriage ceases, we must consider whether the transfer "is related to the cessation of the marriage." Our research discloses no statutory definition and no previous judicial interpretation of the language "related to the cessation of the marriage." The Internal Revenue Service regulations provide:

> Q-7 When is a transfer of property "related to the cessation of the marriage"?
>
> A-7 A transfer of property is treated as related to the cessation of the marriage if the transfer is pursuant to a divorce or separation instrument, as defined in section 71(b)(2), and the transfer occurs *not more than 6 years after the date on which the marriage ceases*. A divorce or separation instrument includes a modification or amendment to such decree or instrument. Any transfer not pursuant to a divorce or separation instrument and any transfer occurring more than 6 years after the cessation of the marriage is presumed to be not related to the cessation of the marriage. This presumption may be rebutted only by showing that the transfer was made to effect the division of property owned by the former spouses at the time of the cessation of the marriage. For example, the presumption may be rebutted by showing that (a) the transfer was not made within the one- and six-year periods described above because of factors which hampered an

earlier transfer of the property, such as legal or business impediments to transfer or disputes concerning the value of the property owned at the time of the cessation of the marriage, and (b) the transfer is effected promptly after the impediment to transfer is removed.

26 C.F.R. Section 1.1041-1T (1985) (emphasis added). The parties dispute the effect of this regulation, plaintiff contending that we should adopt the six-year limit and defendant contending that it merely constitutes a presumptive guideline which may be extended in the sole discretion of the court.

D

We consider these federal statutes and regulations for guidance in interpreting G.S. 50-20. For purposes of interpreting North Carolina statutes, federal practice, even decisions interpreting identical language, does not control this Court. *Bulova Watch Co., Inc. v. Brand Distributors, Inc.*, 285 N.C. 467, 206 S.E. 2d 141 (1974). While federal practice is not controlling, the preferable policy in matters of taxation is for state and federal statutes to be interpreted and applied consistently, particularly where no common law issues are involved. *See Stone v. Lynch*, 68 N.C. App. 441, 315 S.E. 2d 350 (1984), *aff'd*, 312 N.C. 739, 325 S.E. 2d 230 (1985). Our legislature has recognized this policy by providing at numerous places in our tax statutes that the State shall follow federal practice. *Id.* The legislature has recognized not only federal tax statutes but also federal tax regulations as providing guidance in interpreting our law. *See* G.S. 105-144.1(g); G.S. 105-145(e). The very language of G.S. 50-20(b)(3) constitutes a legislative admission of the importance of federal tax treatment in administering the statute. Accordingly we find the I.R.S. regulation persuasive in defining the interpretation of "related to the cessation of the marriage."

We note in addition that G.S. 50-20(b)(3) speaks of payments "treated" as income under the Code. It does not, as the General Assembly has enacted elsewhere, speak of amounts "includible . . . under the internal revenue *laws* of the United States." G.S. 105-141(a)(20)c (emphasis added). Nor does it specifically mention the "provisions of the Code," *compare* G.S. 105-141(b)(9), (10), or specific authorizations of acts of Congress. *Compare* G.S. 105-141(b)(15). We note that the IRS regulation used the same

word, "treated." To "treat" means "to handle, manage, or otherwise deal with," Webster's Third New International Dictionary 2434 (1966), suggesting a more broad concept of federal tax considerations than simple adherence to the letter of federal tax statutes. *See Gomillion v. Lightfoot*, 364 U.S. 339, 5 L.Ed. 2d 110, 81 S.Ct. 125 (1960) ("discriminatory treatment").

### E

One policy underlying the Equitable Distribution Act is to wind up the marriage and distribute the marital property fairly with as much certainty and finality as possible. This policy is implicit in recent decisions of this court. *See Little v. Little*, 74 N.C. App. 12, 327 S.E. 2d 283 (1985) (court must rule as to all marital property); *Wade v. Wade, supra* (error to fail to identify property).

Decisions of other states under similar distribution statutes also reflect a policy favoring certainty and finality. *See Anspach v. Anspach*, 557 S.W. 2d 3 (Mo. App. 1977) (if all property evidenced in record not dealt with in judgment, judgment is interlocutory and appeal dismissed); *In re Tammen*, 63 Cal. App. 3d 927, 134 Cal. Rptr. 161 (1977) (error to award ten-year note in view of uncertain value of security at maturity and duty imposed on holder to protect security); *Hellwig v. Hellwig*, 100 Ill. App. 3d 452, 426 N.E. 2d 1087 (1981) (judgment mandating payment without specifying time to pay error).

In *Borodinsky v. Borodinsky*, 162 N.J. Super. 437, 393 A. 2d 583 (1978), the trial court awarded each party 50% of the stock of a corporation. The Appellate Division reversed, outlining its policy thus:

It seems almost doctrinal that the elimination of the source of strife and friction is to be sought by the judge in devising the scheme of distribution, and the financial affairs of the parties should be separated as far as possible. If the parties cannot get along as husband and wife, it is not likely they will get along as business partners. [Citations.]

. . . There is no restriction on the court with regard to ordering distribution in kind of the eligible assets or awarding a monetary equivalent thereof. But, nonetheless, the judge should consider the former relationship of the parties

and the fact that post-divorce peace is more conducive to the welfare of the parties. [Citation.]

162 N.J. Super. at 443, 393 A. 2d at 586-87. The court there held that under the circumstances an equal stock split, although within the authority of the court, constituted an abuse of discretion and remanded for redetermination. *But see Hutchins v. Hutchins*, 135 Vt. 350, 376 A. 2d 744 (1977) (50% split not abuse of discretion where other assets unavailable and. husband received option to buy out wife). While the *Borodinsky* decision is not directly on point, the policy underlying it is persuasive, since the present judgment creates an ongoing financial relationship between plaintiff and defendant which will last almost two decades beyond divorce.

## F

[13] Based on the foregoing discussion, we interpret the language of G.S. 50-20(b)(3) as authorizing the court to make distributive awards for periods of "not more than six years after the date on which the marriage ceases," except upon a showing by the *payor* spouse that legal or business impediments, or some overriding social policy, prevent completion of the distribution within the six-year period. *See Ruhnke v. Ruhnke*, 218 Neb. 355, 355 N.W. 2d 339 (1984) (award over 15 years proper where husband assumed farm debts and no other money available except upon sale of farm). Awards for periods longer than six years, if necessary, should be crafted to assure completion of payment as promptly as possible. This will serve both statutory goals: affording the recipient's share non-recognition treatment under the Code, and fairly wrapping up the marital affairs as quickly and certainly as possible.

No showing of legal or business impediments to an earlier distribution was made by defendant. We therefore hold that the payment schedule of the distributive award was erroneous *as a matter of law* and must be vacated.

## DISPOSITION

Careful review of the record leads us to conclude that the trial court made a diligent and commendable effort to fairly distribute the marital property. The following errors nevertheless require further attention.

(1) Valuation of Preferred Savings & Loan stock;

(2) Designation and valuation of the interest in the appreciation of 16% inherited interest of LINC; and

(3) Duration of payment of the distributive award.

Accordingly, the case is remanded for proceedings not inconsistent with this opinion. The trial court may rely on the original record, except to the extent that further hearing may be necessary. *Wade v. Wade, supra.*

Reversed in part and remanded.

Judges ARNOLD and PHILLIPS concur.