JEAN H. RICE (NOW JEAN MARIE), PLAINTIFF v. CHARLES E. RICE, III, DEFENDANT

No. COA02-953

(Filed 5 August 2003)

## 1. Divorce— equitable distribution—marital property—fees received by plaintiff's firm

The trial court erred (under then applicable law) in an equitable distribution action by classifying as separate property fees that were received by defendant's law firm before the separation but distributed to defendant after the separation. Defendant's right to share in the funds as a partner of the firm was secured and established prior to the date of separation and could not be canceled. Furthermore, the court's treatment of a marital debt paid with these funds was remanded.

## 2. Divorce— equitable distribution—valuation of law practice—undistributed fees

The trial court erred in an equitable distribution action in its valuation of defendant's law practice by classifying fees received

by the defendant's law firm before the separation and distributed to defendant after the separation as separate property and not including them in the value of the practice.

**3. Divorce— equitable distribution—value of real property— reduction of mortgage—improvements**

The trial court properly applied the source of funds rule in an equitable distribution action when distributing to the marital estate a portion of passive appreciation in real property based on reductions in the mortgage principal and improvements paid for with marital funds. There is no difference between financial contributions to reduce the mortgage and those to improve the property.

**4. Divorce— equitable distribution—distributional factor— health**

The trial court did not err in an equitable distribution action by finding the distributional factor that plaintiff was in good health. Plaintiff's assertion that the trial court ignored a previous judicial recognition that plaintiff suffered from arthritis and hypertension simply attacked an isolated phrase. Plaintiff made no assertion that her arthritis and hypertension affected her work ability.

**5. Divorce— equitable distribution—distributional factors— assistance in bringing up spouse's child**

The trial court did not err in an equitable distribution action by finding the distributional factor that defendant assisted with bringing up plaintiff's daughter by helping to pay for trips, private school tuition, and college expenses. Although support of the parties' children may not be considered, defendant was not the father of plaintiff's daughter and had no legal obligation to care for her. The distributional factor found by the court recognized defendant's voluntary assumption of responsibilities and was properly considered.

**6. Divorce— equitable distribution—potential income and liabilities**

Although it is proper in an equitable distribution action to consider the potential income and liabilities of the parties, it was improper for the trial court to consider plaintiff's potential rental income in this case due to findings about alimony issues.

RICE v. RICE

[159 N.C. App. 487 (2003)]

**7. Appeal and Error— failure to include record page references—issue not considered**

No error was found in an equitable distribution action where plaintiff asserted that the court failed to consider certain distributional factors, but did not include page references to the transcript or exhibits.

**8. Divorce— equitable distribution—pension—distribution to one party**

The trial court did not err in an equitable distribution action by distributing to defendant his entire pension even though a portion of it was marital property. Under the statute applicable to the case, N.C.G.S. § 50-20(b)(3) (1995), the court had a variety of distributive choices that did not restrict it to a proportionally equal division of the pension.

**9. Divorce— alimony—findings—standard of living—potential rental income**

The trial court's findings on remand were insufficient in a divorce action with alimony issues where the action had been remanded for findings on the parties' accustomed standard of living (among other things) and the court made findings regarding the separate "estates" of the parties during the marriage. Additionally, it was improper for the court to consider plaintiff's potential rental income of her North Carolina residence because her new, out-of-state job involved a probationary period and uncertainty as to her continued employment and residence.

**10. Divorce— alimony—fault—dependency**

The trial court did not abuse its discretion in a divorce action in its treatment of fault from defendant's adultery for purposes of alimony. The court found that fault had no effect on the marital economy or the parties' standard of living and should be disregarded. It is clear that the court considered fault only for dependency, and, having concluding that plaintiff was not a dependent spouse, did not need to reach the issue of fault under N.C.G.S. § 50-16.2(1).

Judge LEVINSON concuring in part and dissenting in part.

Appeal by plaintiff from order dated 19 October 2001 and from two separate, amended judgments dated 19 October 2001 by Judge Joseph M. Buckner in New Hanover County District Court. Heard in the Court of Appeals 19 May 2003.

*Wyrick Robbins Yates & Ponton LLP, by Charles W. Clanton and Heidi C. Bloom, for plaintiff-appellant.*

*Cheshire, Parker, Schneider, Bryan & Vitale, by Jonathan McGirt, for defendant-appellee.*

BRYANT, Judge.

Jean Marie (plaintiff), formerly Jean H. Rice, appeals from an order denying her request for a new evidentiary hearing and from amended equitable distribution and alimony judgments dated 19 October 2001.

On 5 July 1995, plaintiff brought an action against her husband Charles E. Rice, III (defendant) seeking a divorce and equitable distribution of the marital property. Plaintiff later amended her complaint to also request alimony. Plaintiff and defendant had married on 14 February 1982, separated on 16 April 1994, and were divorced on 27 October 1995. In an equitable distribution judgment filed 12 November 1998, the trial court concluded that the evidence and distributional factors found by the trial court supported an unequal division of the marital estate in defendant's favor. In a concurrent judgment, the trial court denied plaintiff's claim for alimony on the basis that she was not a dependent spouse. Plaintiff appealed from these judgments, and this Court reversed the November 12 equitable distribution and alimony judgments and remanded the case to the trial court for additional findings and conclusions on the valuation of defendant's law practice and the former marital residence, the issue of fault, and the parties' accustomed standard of living. *See Rice v. Rice*, 138 N.C. App. 710, 536 S.E.2d 662 (2000) (COA99-513) (unpublished) [hereinafter *Rice I*]. On remand, plaintiff requested a new evidentiary hearing, but the trial court denied the motion in its 19 October 2001 order. The trial court then entered an amended equitable distribution judgment, which included the following findings:

Defendant's Law Practice

A.  . . . Defendant was a partner in a law practice known as Jackson & Rice from June 1992 through April 1993, and beginning in May 1993, . . . [d]efendant began practicing as a sole practitioner. As of the date of separation, . . . [d]efendant's solo law practice had been in existence less than one year.

B.  . . . Defendant was expected to receive a share of the fees from two cases . . . handled by the Jackson & Rice firm, but

these fees had not been received by the Jackson & Rice firm before that firm dissolved. . . . Defendant ultimately received these "carryover" fees in four installments, as follows:

(1) The sum of $50,000.00 approximately five months prior to the date of separation . . . .

(2) The sum of $100,000.00 on April 19, 1994, of which sum . . . [d]efendant transferred to . . . [p]laintiff the sum of $22,554.96 on May 2, 1994.

(3) Two further payments totaling approximately $42,811.00 in June 1994, of which . . . [d]efendant transferred to . . . [p]laintiff the sum of $11,773.10 on June 24, 1994.

C. The "carryover" fees received after the date of separation, totaling $142,811.00, although arguably derived from "marital" effort, were not acquired before the date of separation. Accordingly, these fees do not fall within the definition of marital property[] and are properly excluded from the marital estate. However, the [trial] [c]ourt will consider these post-separation funds as a "distributional factor," also to be included in . . . [d]efendant's separate estate.

In subsequently valuing defendant's law practice at $7,400.00, the trial court in essence adopted the valuation of plaintiff's expert but subtracted the $100,000.00 carryover fee received by defendant on 19 April 1994, which plaintiff's expert had included in his calculations, based on the trial court's conclusion that these funds were defendant's separate property.

With respect to the parties' Parmele Boulevard property, the trial court concluded it was a mixed asset, part marital and part separate, and found:

B. The fair market value on [the] date of marriage was $90,000[.00].

C. The property was encumbered by a mortgage at the date of marriage, with a principal balance due of $28,125[.00]. The [trial] [c]ourt accepts the parties' classification of this mortgage as a marital debt.

D. The net value on the date of marriage was $61,875[.00].

E. The fair market value on the date of separation was $185,000[.00].

F. On the date of separation, the principal balance of the mortgage was $16,443[.00] . . . [and] was paid off shortly after the date of separation with "carryover" fees from Jackson & Rice . . . . This use of . . . [d]efendant's separate funds to reduce marital debt should be treated as a distributional factor . . . .

G. The net value on the date of separation was $168,557[.00].

H. Between the date of marriage and the date of separation, the net value of this property increased by $106,682[.00 ]. . . .

I. Between the date of marriage and the date of separation, the principal balance of the mortgage . . . was actively reduced by $11,682[.00] through the use of marital funds. This portion of the active increase in net value should be classified as marital property.

(1) . . . Plaintiff has apparently contended that a portion of the funds used to reduce the principal balance of the mortgage during the marriage[] were her separate funds from an inheritance. However, mortgage payments during the marriage were paid from the parties' joint account, into which . . . [p]laintiff occasionally deposited and commingled her separate, inherited funds. . . . Plaintiff has failed to trace any such separate funds through the joint account as having been specifically "applied" to payment of the mortgage . . . . Accordingly, . . . [p]laintiff has failed to establish by a preponderance of the evidence the "source of funds" that she now claims to have been her separate property.

J. During the marriage, the parties spent approximately $30,000[.00] for improvements to the property, of which approximately $12,000[.00] (or 40%) was marital and $18,000.00 (or 60%) was the separate property of . . . [p]laintiff. These improvements actively increased the net value of the property by $11,500[.00] as of the date of separation. Accordingly, $4,600[.00] of this portion of the active increase in net value should be classified as marital . . . and $6,900[.00] . . . as [plaintiff's] separate property . . . .

K. The remaining $83,500[.00] of the total increase in net value as of the date of separation appears to have been the result of passive appreciation . . . . Although there is no exact way to divide this passive appreciation between the marital estate

and the separate estate of . . . [p]laintiff, the [trial] [c]ourt will attempt to provide a proportionate return on the "investment" of each estate.

L. During the marriage, the "principal" (active) contribution of . . . [p]laintiff's estate to the net value of this property totaled $68,775[.00] (i.e., $61,875[.00] + $6,900[.00]), and the "principal" (active) contribution of the marital estate was $16,282[.00] (i.e., $11,682[.00] + $4,600[.00]). The combined "principal" (active) contribution of the marital and separate estates during the marriage totaled $85,057[.00]. The proportion of this combined total that was marital was 19.14% and the proportion . . . that was separate was 80.86%.

M. Applying the percentages derived from the preceding subparagraph to the total passive appreciation during the marriage (i.e., $83,500[.00]), the marital share of the passive appreciation is therefore $15,982[.00], and . . . [p]laintiff's separate share . . . is . . . $67,518[.00].

O. Adding the active and passive shares of the total increase in net value between date of marriage and date of separation results in a marital share of $32,264[.00] (i.e., $16,282[.00] + $15,982[.00]) and in a separate share for . . . [p]laintiff of $136,293[.00] (i.e., $68,775[.00] + $67,518[.00]).

In the amended alimony judgment dated 19 October 2001 and written from the perspective of the date of trial, the trial court considered the parties' respective incomes, expenses, earning capacities, and estates. With respect to plaintiff's earning capacity, the trial court also considered the potential rental income plaintiff could have earned from the Parmele Boulevard residence because plaintiff was living in Mobile, Alabama at the time of the hearing. Based on its findings, the trial court ultimately concluded that plaintiff was not a dependent spouse. On the issue of fault, the trial court found as follows:

Defendant stipulated that he committed adultery under the statutory definition after the parties separated, and the [trial] [c]ourt finds that he committed adultery within the meaning of N.C. Gen. Stat. § 50-16.2(1). This "fault" on the part of . . . [d]efendant does not appear to have had any effect on the marital economy or the accustomed standard of living of the parties prior to the date of separation.

Accordingly, the trial court denied plaintiff's request for alimony and attorney's fees.

_____

The issues are whether the trial court: erred in (I) classifying the carryover fees received by defendant after the date of separation as his separate property; (II) valuing defendant's law practice; (III) calculating the marital estate's portion of the passive appreciation in the net value of the Parmele Boulevard property; and abused its discretion in (IV) finding certain distributional factors; (V) awarding defendant his entire pension even though it was part marital property; and (VI) denying plaintiff alimony.

*Equitable Distribution*

I

**[1]** In her first assignment of error, plaintiff argues that the trial court erred in classifying the carryover fees, received by defendant after the date of separation, as his separate property because defendant had a vested property interest in the carryover fees prior to the date of separation.

As an initial matter, we note that due to the timing of this action, our analysis is based on the equitable distribution law as it existed prior to 1 October 1995. In determining the equitable distribution of the parties' property under the prior law, the trial court must first classify property as either marital or separate. *Godley v. Godley*, 110 N.C. App. 99, 108, 429 S.E.2d 382, 388 (1993); *see also* N.C.G.S. § 50-20(a) (2001) (the current version of the statute provides for divisible property as a third classification). "[T]he party claiming the property to be marital must meet the burden of showing by a preponderance of the evidence that the property was acquired by either spouse or both spouses during the marriage, before the date of separation, and is presently owned." *Godley*, 110 N.C. App. at 108, 429 S.E.2d at 388; N.C.G.S. § 50-20(b)(1) (1995). The dispositive factor as to when property was acquired is whether the right to receive the property vested prior to the date of separation. *Godley*, 110 N.C. App. at 115, 429 S.E.2d at 392; N.C.G.S. § 50-20(b)(1)-(2) (1995) ("[m]arital property includes all vested . . . deferred compensation rights" whereas "[t]he expectation of nonvested . . . deferred compensation rights shall be considered separate property"); *compare* N.C.G.S. § 50-20(b)(1) (2001) (the current statutory scheme recognizes both vested and nonvested deferred compensation rights as marital property). Vesting occurs when "the right to the enjoyment of [an inter-

est], either present or future, is not subject to the happening of a condition precedent." *Black's Law Dictionary* 816 (7th ed. 1999). Our case law has further defined a vested interest as "a right which is otherwise secured, established, and immune from further legal metamorphosis," *Gardner v. Gardner*, 300 N.C. 715, 718-19, 268 S.E.2d 468, 471 (1980); in other words, it is a right that cannot be canceled, *Fountain v. Fountain*, 148 N.C. App. 329, 337 n.11, 559 S.E.2d 25, 32 n.11 (2002) (holding that "the stock options were vested . . . because the right to exercise the options could not be canceled").

In this case, the trial court concluded that although the $142,811.00 in carryover fees received by defendant were derived from marital efforts, they were received after the date of separation and therefore represent his separate property. The trial testimony pertinent to this issue, however, reveals that a settlement offer was conveyed to the Jackson & Rice law firm and subsequently accepted by the firm on behalf of its clients, and a settlement check was thereafter received by the firm and deposited into the firm's account prior to the date of separation. The firm being in receipt of the settlement check, the *condition precedent* for defendant's entitlement to a share of those fees had thus been met. *See Black's Law Dictionary* 816. This is notwithstanding the condition subsequent created by the dissolution of the law partnership and the settlement of the firm's affairs. Accordingly, defendant's right, as partner of the firm, to a share in the fees was secured and established prior to the date of separation and could not be canceled. *See Gardner*, 300 N.C. at 718-19, 268 S.E.2d at 471. This determination is consistent with our case law holding that "funds received after the date of separation may appropriately be classified as marital property under certain circumstances when the right to receive those funds is acquired during the marriage and before separation." *Smith v. Smith*, 111 N.C. App. 460, 483-84, 433 S.E.2d 196, 210 (1993) (finding time stock sold as opposed to post-date-of-separation time when check representing the proceeds of the stock sale was received determinative in concluding that proceeds were marital property), *rev'd in part on other grounds*, 336 N.C. 575, 444 S.E.2d 420 (1994); *see Johnson v. Johnson*, 317 N.C. 437, 346 S.E.2d 430 (1986) (settlement received after the date of separation upon a spouse's claim for personal injuries sustained during the marriage is marital property if it represents compensation for economic loss); *Talent v. Talent*, 76 N.C. App. 545, 554-55, 334 S.E.2d 256, 262 (1985) (funds collected by one spouse after the date of separation on a loan made during marriage with marital funds are marital property); *see also Godley*, 110 N.C. App. at 108, 115, 429 S.E.2d at 387-88,

391-92 (finding no vested interest where the defendant had a contractual right to receive commissions but no commissions had become due on the date of separation because several hundred acres of the land from the sale of which the defendant would be paid remained to be sold). Thus, under the statutory provisions in effect at the time this action was filed, the trial court erred in classifying the $142,811.00 as defendant's separate property.

In a related issue plaintiff contends that since the trial court erred in classifying the carryover fees received from the Jackson & Rice firm after the date of separation, it also erred in granting only defendant credit and assigning to him a distributional factor justifying an unequal division of the marital property for paying off marital debt with these funds. To the extent this was done by the trial court, it must be reversed, and the issue is remanded for treatment in accordance with this opinion.

II

[2] Plaintiff further contends the trial court erred in valuing defendant's law practice at $7,400.00. In her brief to this Court, plaintiff states that because the $100,000.00 carryover fee received by defendant on 19 April 1994 and included by plaintiff's expert in the valuation of the practice was marital property, the trial court's assessed value would only be correct if it had included the fee "as a personal marital asset outside the practice." But since the trial court failed to do so, plaintiff asserts that the amount, due to its marital nature, should have been included in the valuation of the law practice. As we determined that the trial court did indeed err by failing to classify the carryover fees as marital property, plaintiff's assertions are correct and must be addressed on remand.

III

[3] In her next assignment of error, plaintiff appears to argue that the trial court erred in distributing to the marital estate a portion of the passive appreciation in the net value of the Parmele Boulevard property based on reductions in the mortgage principal *and* improvements to the property paid for with marital funds. Plaintiff asserts that the marital estate's share of the passive increase in the property's net value may only be based on reductions in the principal mortgage balance. Plaintiff, however, cites no authority supporting this proposition.

"Increases in value to separate property attributable to the financial, managerial, and other contributions of the marital estate are

'acquired' by the marital estate." *Ciobanu v. Ciobanu,* 104 N.C. App. 461, 465, 409 S.E.2d 749, 751 (1991). Furthermore, under the source of funds theory:

> [W]hen both the marital and separate estates contribute assets towards the acquisition [or improvement] of property, each estate is entitled to an interest in the property in the ratio its contribution bears to the total investment in the property. Thus, both the separate and marital estates receive a proportionate and fair return on [their] investment.

*Wade v. Wade,* 72 N.C. App. 372, 382, 325 S.E.2d 260, 269 (1985); *see Godley,* 110 N.C. App. at 109, 429 S.E.2d at 389; *see also supra* (the trial court's extensive findings with respect to the classification and valuation of the marital and separate interests in the Parmele Boulevard property). Accordingly, there is no difference between financial contributions to reduce the mortgage principal and those to improve the property itself. Because both types of active contributions entitle the marital estate to a proportionate return on its investment, the trial court properly applied the source of funds rule as required by this Court in *Rice I* and plaintiff's assignment of error is overruled.

IV

[4] Plaintiff also assigns error to the following distributional factors found by the trial court:

A. . . . Plaintiff is 51 years of age and appears to be in good health, such that she is capable of earning a sufficient amount of income to support herself.

. . . .

N. After the Deed of Trust was paid off in June of 1994, [p]laintiff had no Deed of Trust expense. The Deed of Trust payments were $450.00 per month. She has enjoyed substantially free housing for the four years from the payoff of the Deed of Trust . . . until the hearing in June of 1998.

O. Plaintiff currently does not live in the residence and could at least rent the property for several thousand dollars during the summer vacation season. . . .

. . . .

Q. . . . Defendant assisted with the upbringing of [p]laintiff's daughter by helping to pay for her private school tuition, college expenses, and trips.

As to the first distributional factor, plaintiff asserts that it ignores this Court's recognition in *Rice I* that plaintiff suffered from arthritis and hypertension. The trial court, however, only made a qualified statement about plaintiff's health, finding that the state of her health was such that she was capable of earning a sufficient amount of income to support herself. As plaintiff simply attacks an isolated phrase and makes no assertion in her brief that her arthritis and hypertension affected her work ability, we find no error with respect to this factor.

[5] Plaintiff next contends that factor Q was inappropriate because N.C. Gen. Stat. § 50-20(f) prohibits consideration during an equitable distribution proceeding of the "support of the children of both parties." N.C.G.S. § 50-20(f) (2001) (same as 1995 version). We disagree. Defendant was not the father of plaintiff's daughter and had no legal obligation to care for the daughter. As such, the distributional factor found by the trial court did not address defendant's child support obligations but instead recognized his voluntary assumption of responsibilities and was therefore properly considered under the catch-all provision of N.C. Gen. Stat. § 50-20(c)(12) (2001) (same as 1995 version).

[6] Plaintiff also argues that factors N and O were improper because the trial court considered her potential income and liabilities for the four-year period between the date of separation and the hearing. N.C. Gen. Stat. § 50-20(c)(1) requires the trial court to consider "[t]he income, property, and liabilities of each party at the time the division of property is to become effective." N.C.G.S. § 50-20(c)(1) (2001) (consistent with 1995 version). This Court has held that "[t]he factors listed under subsection (c) indicate that the legislature intended to grant the trial court the authority to consider the future prospects of the parties, as well as their status at the time of the hearing, in determining whether an equal division of marital assets would be equitable." *Harris v. Harris*, 84 N.C. App. 353, 359, 352 S.E.2d 869, 873 (1987); *see also Dolan v. Dolan*, 148 N.C. App. 256, 259, 558 S.E.2d 218, 220 (post-separation rental income can be a distributional factor), *aff'd*, 355 N.C. 484, 562 S.E.2d 422 (2002) (per curiam); *Chandler v. Chandler*, 108 N.C. App. 66, 69, 422 S.E.2d 587, 590 (1992). Accordingly, consideration of these post-separation factors is proper; nevertheless, for the reasons stated below in our discussion of the

alimony judgment, we conclude it was error for the trial court to consider plaintiff's potential rental income in this case.

[7] Finally, plaintiff asserts the trial court abused its discretion in failing to consider certain distributional factors for which the parties offered evidence. *See Haywood v. Haywood*, 106 N.C. App. 91, 100, 415 S.E.2d 565, 571 (1992) ("[w]hen a party introduces evidence of a distributional factor under N.C.G.S. § 50-20(c), the trial court must consider the factor and make a finding of fact with regard to it"), *rev'd in part on other grounds*, 333 N.C. 342, 425 S.E.2d 696 (1993). Plaintiff, however, failed to include any page number references to the transcript or exhibits in her brief to this Court, thereby preventing meaningful review of the voluminous record on appeal. *See* N.C.R. App. P. 28(b)(5)-(6) (appellate briefs shall contain "all material facts . . . supported by references to pages in the transcript to the proceedings"); *Naddeo v. Allstate Ins. Co.*, 139 N.C. App. 311, 316, 533 S.E.2d 501, 504 (2000) ("such references [are] invaluable in directing the [C]ourt's attention to the pertinent portions of the record"). Thus, this assignment of error is overruled.

V

[8] In addition, plaintiff assigns error to the trial court's distribution to defendant of his entire pension even though a portion of the pension was marital property. In support of her argument, plaintiff relies on statutory provisions that were yet to be enacted at the time this action was filed. The statute applicable to this case provides for a distributive award of a pension:

a. As a lump sum by agreement;

b. Over a period of time in fixed amounts by agreement;

c. As a prorated portion of the benefits made to the designated recipient at the time the party against whom the award is made actually begins to receive the benefits; or

d. By awarding a larger portion of other assets to the party not receiving the benefits, and a smaller share of other assets to the party entitled to receive the benefits.

N.C.G.S. § 50-20(b)(3) (1995). Accordingly, the trial court had various distributive choices that did not restrict it to a proportionally equal division of the pension itself as advocated by plaintiff. Thus, this assignment of error is without merit.

*Alimony*

VI

**[9]** In *Rice I*, this Court determined that N.C. Gen. Stat. § 50-16.1, *et seq.*, applicable to actions filed before 1 October 1995, applies to the parties' alimony action. *Rice I*, 138 N.C. App. 710, 536 S.E.2d 662. According to section 50-16.1(3), a dependent spouse "means a spouse, whether husband or wife, who is actually substantially dependent upon the other spouse for his or her maintenance and support or is substantially in need of maintenance and support from the other spouse." N.C.G.S. § 50-16.1(3) (1995) (repealed). Conversely, a " '[s]upporting spouse' means a spouse . . . upon whom the other spouse is actually substantially dependent or from whom such other spouse is substantially in need of maintenance and support." N.C.G.S. § 50-16.1(4) (1995) (repealed).

> If the court determines that one spouse is not actually dependent on the other for such support, the court must then determine if one spouse is "substantially in need of maintenance and support" from the other, i.e., whether one spouse would be unable to maintain his or her accustomed standard of living, established prior to separation, without financial contribution from the other.

*Talent*, 76 N.C. App. at 548, 334 S.E.2d at 258-59 (citations omitted). In doing so, the trial court must make findings as to the following:

> (1) the standard of living, socially and economically, to which the parties as a family unit became accustomed during the several years prior to their separation; (2) the present earnings, prospective earning capacity, and any other condition, such as health, of each spouse at the time of the hearing; (3) whether the spouse seeking alimony has a demonstrated need for financial contribution from the other spouse in order to maintain the parties' accustomed standard of living, taking into consideration the spouse's reasonable expenses in light of that standard of living; and (4) the financial worth or "estate" of both spouses. The court must also consider fault and other facts of the particular case such as the length of the marriage and the contribution made by each spouse to the financial status of the family over the years.

*Id.* (citation omitted). Once a determination of dependency has been made, N.C. Gen. Stat. § 50-16.2 provides that "[a] dependent spouse is entitled to an order for alimony when . . . [t]he supporting spouse has

committed adultery." N.C.G.S. § 50-16.2(1) (1995) (repealed). This statute does not include any requirement that the adultery have an economic impact.

In *Rice I*, this Court reversed the alimony judgment and remanded for findings on the parties' accustomed standard of living, the issue of fault based on defendant's admitted adultery, and plaintiff's health. In reviewing the amended alimony judgment before us, we note that the trial court once again failed to make any findings with respect to the accustomed standard of living during the marriage. Instead, the trial court simply made findings regarding the separate "estates" of the parties during the marriage. As the point in evaluating the parties' accustomed standard of living is to consider the pooling of resources that marriage allows, the trial court's findings are insufficient. *See Talent*, 76 N.C. App. at 548, 334 S.E.2d at 259 ("the court must determine and consider . . . the standard of living, socially and economically, to which the parties *as a family unit* became accustomed during the several years prior to their separation") (emphasis added); *see Williams v. Williams*, 299 N.C. 174, 181, 261 S.E.2d 849, 855 (1980) (term "contemplates the economic standard established by the marital partnership for the family unit during the years the marital contract was intact").

In addition, it was improper for the trial court to consider plaintiff's potential rental income of the Parmele Boulevard residence. As this Court found in *Rice I*:

> In March of 1998, three months before the trial, plaintiff accepted a job with Adams Mark Motel in Mobile, Alabama for a gross annual income of $42,000[.00]. At the time of the trial, plaintiff was in the probationary period with Adams Mark Motel and was not certain whether she would remain in Mobile.

*Rice I*, 138 N.C. App. 710, 536 S.E.2d 662. In light of the uncertainty as to plaintiff's continued employment and residence, it was premature for the trial court to expect plaintiff to supplement her income with the rental of her North Carolina residence.

[10] Finally, plaintiff contends the trial court abused its discretion in its treatment of the issue of fault for purposes of alimony. In the amended alimony judgment, the trial court concluded that defendant's adultery, found as fact by the trial court, did "not appear to have had any effect on the marital economy or the accustomed standard of living of the parties prior to the date of separation" and should there-

fore be disregarded. Pursuant to *Rice I*, the trial court was directed to consider defendant's adultery for purposes of analyzing (a) the fault element listed in *Talent* as one of the factors to consider in determining plaintiff's status as a dependent spouse and (b), if plaintiff was found to be dependent, whether alimony must be awarded pursuant to section 50-16.2(1). Economic impact of marital fault would have an effect on the determination of dependency; however, it bears no weight on the second prong of the analysis as provided by section 50-16.2(1). In this case, it is clear that the trial court only considered fault for purposes of dependency, and because it concluded that plaintiff was not a dependent spouse, the trial court did not need to reach the issue of fault under section 50-16.2(1) addressed in *Rice I*. Accordingly, we find no abuse of discretion as to this issue.

Because of the errors found with respect to the amended alimony judgment, the alimony portion of this case is also remanded, with instructions to enter findings and conclusions consistent with this opinion. Furthermore, in light of the need to remand this case, we do not address plaintiff's remaining issues with respect to the alimony judgment.

Reversed and remanded.

Chief Judge EAGLES concurs.

Judge LEVINSON concurs in part and dissents in part.

LEVINSON, Judge, concurring in part and dissenting in part.

I concur with the majority opinion in all respects except the following.

First, I disagree with the majority's conclusion that the trial court erred by considering "plaintiff's potential rental income" as a distributional factor. At issue is the trial court's distributional factor O, which provides in its entirety:

> Plaintiff currently does not live in the residence and could at least rent the property for several thousand dollars during the summer seasons. The Plaintiff failed to explain or justify to the satisfaction of the [c]ourt her failure to maximize the income from this property (which is especially puzzling in light of the Plaintiff's asserted "need" for alimony from the Defendant).

The majority reasons that, because plaintiff accepted an out-of-state job three months before the trial, "it was premature for the trial court to expect plaintiff to supplement her income with the rental of her North Carolina residence." I disagree.

The trial court is afforded wide discretion in entering equitable distribution orders, enabling the court to fashion its orders with regard to the specific facts and circumstances of a given case. *Wall v. Wall*, 140 N.C. App. 303, 307, 536 S.E.2d 647, 650 (2000). Further, the trial judge is in a better position than this Court to evaluate witnesses' credibility and the evidence. In the present case, the evidentiary facts underlying factor O are undisputed—that the plaintiff was in the probationary period of a new job, was living out of state, and had not rented her house for the summer.

Moreover, the trial court is charged with the exercise of discretion to determine whether O, standing alone or in combination with other factors, supports an unequal division of the marital estate. The majority acknowledges the trial court's obligation under G.S. § 50-20(c)(1) to consider "[t]he income, property, and liabilities of each party at the time the division of property is to become effective[,]" and quotes *Harris v. Harris*, 84 N.C. App. 353, 359, 352 S.E.2d 869, 873 (1987), for the proposition that "the legislature intended to grant the trial court the authority to consider the future prospects of the parties, as well as their status at the time of the hearing, in determining whether an equal division of marital assets would be equitable." That being so, the majority's conclusion that the trial court abused its discretion is puzzling. In conducting our review, this Court may disagree with a trial court's determination of whether the evidence should support an unequal division of the marital estate. However, this does not necessarily manifest error on the part of the trial judge who sits in the best position to make such a decision. "[T]he trial court's rulings in equitable distribution cases receive great deference and may be upset only if they are so arbitrary that they could not have been the result of a reasoned decision." *Lawing v. Lawing*, 81 N.C. App. 159, 162, 344 S.E.2d 100, 104 (1986). In the present case, I conclude the trial court did not abuse its discretion by considering plaintiff's decision not to rent her property when she could have done so. Accordingly, I would hold that plaintiff failed to demonstrate error with respect to factor O.

For similar reasons, I disagree with the majority's conclusion that it was an abuse of discretion for the trial court to consider "plaintiff's potential rental income of the Parmele Boulevard residence" in its

determination that plaintiff was not a dependent spouse. The majority concludes that because of the "uncertainty as to plaintiff's continued employment and residence, it was premature . . . to expect plaintiff to supplement her income with the rental of her North Carolina residence." However, our trial courts are necessarily vested with wide discretion in alimony determinations and frequently assign varying degrees of significance to evidence that does not necessarily lend itself to one interpretation over another. In the present case, the court's evaluation of the potential rental income, like its evaluation of many other facts and circumstances, is clearly permissible. Again, the relevant facts regarding plaintiff's failure to rent out her North Carolina home were not disputed. I would hold that the trial court properly considered plaintiff's potential rental income in making its determination of whether plaintiff was a dependent spouse.

With respect to the potential rental income issue for the equitable distribution and alimony determinations, the majority has erroneously replaced its own judgment for that of the trial court.