JOANN M. HARRIS v. EMERY HOOPER HARRIS

No. 8615DC573

(Filed 17 February 1987)

**1. Divorce and Alimony § 30 — equitable distribution of marital property — defendant's earning potential properly considered**

 The trial court properly considered defendant's earning potential as a factor leading to its determination that an equal division of marital property would be inequitable; moreover, the court's conclusion that defendant's income earning ability was substantially greater than plaintiff's was clearly supported by its findings of fact and by the evidence.

**2. Divorce and Alimony § 30 — equitable distribution of marital property — determination of value of defendant's separate property proper**

 The trial court did not err in its determination of the value of defendant's separate property where the valuation placed on certain real property was based on the valuation given to it by defendant in a financial statement; values assigned by defendant to other properties could not be determined because he failed to include the financial statement in the record on appeal, and it was therefore presumed that the trial court's findings were based upon competent evidence; evidence amply supported the court's finding that defendant received approximately $1,100 per month as payment on a six year promissory note; and even if the court did err in finding that defendant's separately owned stocks were worth $8,000, such error was harmless because the trial court did not include the value of defendant's stock in its computation of the value of his separate property.

**3. Husband and Wife § 30 — equitable distribution of marital property — treatment of country club stock — no error**

 Any error which the trial court may have committed by failing to apportion the respective marital and separate interests in country club stock and by charging the entire value against defendant's distributive share of the marital property was, in view of the total value of the marital property, of such limited significance as not to require recomputation of the respective awards to the parties; furthermore, in the proposed findings of fact and judgment which defendant tendered to the trial court, he also treated the country club stock as marital property.

**4. Divorce and Alimony § 30 — equitable distribution of marital property — residence to plaintiff — distribution award to defendant — method of payment improper**

 Though the trial court did not err in awarding the marital residence to plaintiff and making a distributive award to defendant, the court's method of payment of the award, based on the age of the parties' youngest child, resulted in the payment not being due for more than seven years after the termination of the marriage, rather than within six years, and it thus violated the provision of N.C.G.S. § 50-20(b)(3) that a distributive award "shall not include

payments that are treated as ordinary income to the recipient under the Internal Revenue Code"; moreover, the court did not make any findings with respect to the existence of any legal or business impediments which would prevent completion of the distributive award within six years after termination of the marriage.

APPEAL by defendant from *Washburn, Judge*. Judgment entered 30 January 1986 in District Court, ALAMANCE County. Heard in the Court of Appeals 12 November 1986.

Plaintiff and defendant were married to each other in 1964. Three children were born of the marriage, two of whom are still minors. The parties separated in February 1984. Plaintiff brought this action seeking, *inter alia*, alimony, custody of the children, child support, and an equitable distribution of the parties' marital property upon an absolute divorce being granted. Following a hearing in August 1984, an order was entered awarding plaintiff custody of the minor children and requiring defendant to pay child support, alimony *pendente lite*, and attorneys' fees. Plaintiff was also granted a writ of possession to the parties' marital residence and the furniture and furnishings located therein until the parties' youngest child reaches 18 years of age.

A judgment of absolute divorce was entered 17 April 1985. Two evidentiary hearings were conducted concerning the issue of the distribution of the marital property. On 30 January 1986, the trial court entered an order concluding that an equal division of the marital property would not be equitable and providing for its unequal distribution. Defendant appeals.

*T. Randall Sandifer and Wiley P. Wooten for plaintiff appellee.*

*Latham and Wood, by James F. Latham and William A. Eagles for defendant appellant.*

MARTIN, Judge.

The defendant assigns error to numerous of the trial court's findings of fact, contending primarily that they are not supported by the evidence. He also contends that the trial court erred in its conclusion that an equal division of the marital assets would not be equitable. We decline to disturb the trial court's judgment in any of these respects. However, one of defendant's assignments of

error, involving a distributive award ordered by the court, has merit and necessitates that we vacate the distributive award as ordered and remand the case for further proceedings.

The trial court's findings of fact may be summarized as follows:

The parties were married from 31 January 1964 to 17 April 1985. Plaintiff is a high school graduate and has completed one and one-half years of college. Defendant is a graduate of North Carolina State University and has been employed in the textile industry all of his life. Two of their three children are minors and are in the custody of plaintiff.

Defendant was employed with his family's hosiery business from 1976 until the fall of 1982. In January of 1983, the parties incorporated Lakeside Dyeing and Finishing Company with the outstanding common stock issued in the name of the defendant. Both parties worked in the business until their separation. Since the separation plaintiff has obtained employment at the Bowman Eye Clinic.

The parties own, as tenants by the entirety, the marital dwelling and lot located on Ferndale Drive in Burlington. The plaintiff and the minor children are living in the Ferndale residence pursuant to a writ of possession granted in the 7 August 1984 custody order and have the use and possession of the furnishings therein.

The parties' marital assets consist primarily of their home, household furnishings and motor vehicles. These assets are of a nonliquid character and have a net fair market value of $92,118.63. The trial court included in the marital assets five shares of Alamance Country Club Stock which defendant sold after the separation for $1,250, using the proceeds for his own purposes.

Upon the date of the parties' separation, defendant owned the following assets as his separate property which had a net fair market value as indicated:

1. Joint Money Market Account
   traceable to defendant's separate property          5,224.36
2. Antique wine cabinet                                   400.00

Harris v. Harris

| | |
|---|---:|
| 3. Personal clothing | 1,000.00 |
| 4. Coin collection | 500.00 |
| 5. Stereo-radio | 500.00 |
| 6. 38.02 acres farmland in Boone Station Township | 38,000.00 |
| 7. 23⅔ acres in Rutherford County | 23,500.00 |
| 8. One-half undivided interest in 77 acres in Alamance County | 38,500.00 |
| Total | $107,624.36 |

After the parties separated, defendant borrowed $15,000 to refinance some of Lakeside Dye's debts, securing the loan with a deed of trust on his separate realty. As of the date of the equitable distribution hearing, the foregoing assets had a net value of $92,624.36. Pursuant to a stipulation, it was agreed that the stock and realty of Lakeside Dyeing and Finishing, Inc. would be distributed to defendant at "a zero value." In addition to these assets, defendant owned, upon the date of separation, stock in a family hosiery mill. Subsequent to the separation he sold the stock for approximately $19,000 cash and a promissory note providing for payments of approximately $1,100 per month for six years. Defendant also owns other stock acquired from his father with a net fair market value of approximately $8,000.

The court found that defendant's adjusted gross income for the calendar year 1982 was $37,000, and for the calendar year 1983, his gross income was in excess of $18,500. Although defendant had discontinued his monthly salary from Lakeside Dye in March 1983, the court found that Lakeside Dye was not in financial distress and was capable of paying defendant a reasonable salary.

At the date of the parties' separation, plaintiff owned separate property, consisting of jewelry, clothing, and dishes, having a fair market value of $3,300. The trial court further found that the plaintiff needs ownership of the Ferndale residence in order to properly maintain it and that the value of the defendant's separate property and promissory note payments plus his superior earning ability gives him a substantial economic advantage over plaintiff.

The trial court thereafter concluded:

. . . that an equal division of the parties' marital assets is not equitable in that:

a) the defendant's present income earning ability and the present net value of his separate property, including the balance of the promissory note payments, are substantially greater than plaintiff's;

b) the plaintiff, as the custodial parent of the parties' minor children, needs to own and occupy the former marital dwelling and the household furniture located therein;

c) the plaintiff made direct and indirect contributions to the starting of Lakeside Dyeing and Finishing Co., the stock of which is owned by the defendant, through her working at the Company while contributing her time and efforts as defendant's spouse, providing for their children and serving as homemaker; and

d) [sic] the nonliquid character of the marital property.

The trial court distributed to plaintiff marital property having a net fair market value, as of the date of separation, of $78,978, and distributed to defendant marital property having a net fair market value of $13,140.63. Plaintiff was ordered to pay to defendant a distributive award, as authorized by G.S. 50-20(e), in the amount of $23,706.82, but payment of the award was postponed until the parties' youngest child reaches age 18 or graduates from high school, whichever event last occurs. Plaintiff was ordered to assume the existing indebtedness on the residence and to execute a note, secured by a second deed of trust on the residence, payable to defendant in the amount of the distributive award with interest at 8% compounded annually. The furniture and furnishings located in the residence were continued under the writ of possession until the youngest child reaches her majority.

Defendant first contends that the trial court erred in ordering an unequal distribution of the marital assets. He asserts that the court's conclusion that an equal division would not be equitable is grounded upon findings of fact which are unsupported by the record. He specifically challenges the court's findings of fact with respect to his income and the value of his separate property.

North Carolina's Equitable Distribution statute mandates that marital property be divided equally unless the court determines that an equal division would not be equitable. *White v. White*, 312 N.C. 770, 324 S.E. 2d 829 (1985). "If the court determines that an equal division is not equitable, the court shall divide the marital property equitably." G.S. 50-20(c). In making this determination, the court must consider the specific factors listed in G.S. 50-20(c), as well as any other factor raised by the evidence reasonably related to division of the marital property. If the court, upon balancing the factors tending to show that an equal division would be inequitable against the strong public policy favoring equal division, concludes that equal division would not be equitable, the court may properly order an unequal division, but must clearly articulate the facts which support that conclusion. *Alexander v. Alexander*, 68 N.C. App. 548, 315 S.E. 2d 772 (1984). Distribution of the marital property is then committed to the sound discretion of the trial judge, the exercise of which will not be disturbed absent some clear abuse. *Lawing v. Lawing*, 81 N.C. App. 159, 344 S.E. 2d 100 (1986).

In the present case, the trial court found facts relating to the factors listed in G.S. 50-20(c) and concluded that an equal division of the parties' marital property would not be equitable. We are bound by the court's findings if they are supported by any competent evidence. *Lawing, supra.* The court's conclusion, reached upon balancing those facts against the policy favoring an equal division, is a matter entrusted to its sound discretion and is reversible only if "manifestly unsupported by reason." *White, supra*, at 777, 324 S.E. 2d at 833.

[1] We first consider defendant's contention that the trial court erred in its findings concerning the respective incomes of the parties. He contends that the court improperly relied on defendant's superior income earning ability to conclude that defendant's income exceeded plaintiff's income. We disagree.

In *Andrews v. Andrews*, 79 N.C. App. 228, 338 S.E. 2d 809, *disc. rev. denied*, 316 N.C. 730, 345 S.E. 2d 385 (1986), this court affirmed the trial court's conclusion that an equal division of marital assets would be inequitable because the defendant-husband "had greater earning potential, because plaintiff had custody of both minor children, and because of plaintiff's services as

homemaker and caretaker." *Andrews* at 231, 338 S.E. 2d at 811. In that case, the defendant's earning potential was treated as a factor proper for consideration as "income" under G.S. 50-20(c)(1).

The language of G.S. 50-20(c), read as a whole, supports such a conclusion. The factors listed under subsection (c) indicate that the legislature intended to grant the trial court the authority to consider the future prospects of the parties, as well as their status at the time of the hearing, in determining whether an equal division of marital assets would be equitable. The statute directs the court to consider, among other things, obligations for support arising out of prior marriages, the age and health of the parties, the need of the custodial parent to own or occupy the marital residence, expectations of nonvested pension or retirement rights, and contributions to the development of the other spouse's career potential. All of these factors relate, in part, to future prospects and responsibilities of the parties. Thus, we hold that the trial court properly considered defendant's earning potential as a factor leading to its determination that an equal division would be inequitable.

Moreover, the court's conclusion that defendant's income earning ability is substantially greater than plaintiff's is clearly supported by its findings of fact and by the evidence. Defendant testified that he is a college graduate and has worked with textiles all of his life. He has earned substantial incomes in his previous employments and receives substantial income from sources other than employment. Although he has incurred liabilities associated with the operation of Lakeside Dye, and was receiving no salary at the time of the hearing, the record reflects that he owns substantial separate property valued at $92,624.36, most of which has income producing potential. On the other hand, plaintiff has completed only a year and a half of college. She owns separate property worth only $3,300, none of which has potential for income production. She is the custodial parent for the two minor children. Although the trial court found her present income to be $750 per month when all of the evidence indicates that her salary is $850 per month, we conclude such error is harmless in view of the overwhelming economic advantage defendant retains over plaintiff due to his greater earning potential and valuable separate property.

[2]   Defendant also asserts that the trial court erred in its determination of the value of his separate property. He contends that the trial court made no finding of fact as to the value of his separate property "at the time the division of property is to become effective" as required by G.S. 50-20(c)(1).

In his testimony, defendant estimated the value of his 38.02 acres in Boone Station Township to be $800 per acre. He estimated the value of his 23.67 acres in Rutherford County and his one-half interest in 77 acres at Morton Township to be $700 per acre. He further testified to a belief that these properties had decreased in value since the date of separation. In its findings of fact, however, the trial court found that each of defendant's realty interests was worth $1,000 per acre and that none of the properties had decreased in value since the date of separation. Defendant contends that these findings are unsupported by competent evidence and that the trial court's use of the inflated figures flawed its determination that an equal division would be inequitable. We disagree.

The record indicates that plaintiff introduced into evidence, without objection, a financial statement in which defendant had placed higher valuations upon the properties than those to which he testified. Although the exhibit was not included with the record on appeal, the transcript of testimony reveals that, upon cross-examination by plaintiff's counsel, defendant admitted that he had valued his Morton Township property at $1,000 per acre on the financial statement. We have no way to determine what values defendant assigned, on the financial statement, to the other two properties because he did not include the exhibit in the record on appeal. When the evidence is not included in the record, it is presumed that the trial court's findings are based upon competent evidence. *Webb v. James*, 46 N.C. App. 551, 265 S.E. 2d 642 (1980).

Defendant also contends that the trial court did not determine the value of his promissory note when valuing his separate property. We disagree. The trial court specifically found that defendant was receiving approximately $1,100 per month as payment on a six-year promissory note. The court further found that approximately four and one-half years remained on the note, a

year and a half having elapsed on the six-year term of the note. These findings are amply supported by evidence of record.

Defendant asserts that the trial court erred by finding that his separately owned stocks were worth $8,000. Even if there was error in this finding, it was harmless because the trial court did not include the value of defendant's stock in its computation of the value of his separate property. Therefore, the finding could not have affected the court's conclusion that an equal division of property would not be equitable.

[3] Defendant also contends that the trial court erred by including, as marital property, the shares of stock in Alamance Country Club and by charging the value of those shares, $1,250, as a part of his distributive share of the marital property. He contends that the stock was his separate property.

Although the evidence discloses that defendant purchased the country club stock during the marriage with his own separate funds, other evidence indicates that the country club membership, evidenced by the stock, was maintained by the use of marital funds. Therefore, the evidence supports a finding that at least a portion of the value of the country club stock was attributable to investments of marital property. Any error which the trial court may have committed by failing to apportion the respective marital and separate interests in the stock and by charging the entire value against defendant's distributive share of the marital property is, in view of the total value of the marital property, of such limited significance as not to require recomputation of the respective awards to these parties. Our view in this respect is reinforced by the fact that, in the proposed Findings of Fact and Judgment which defendant tendered to the trial court, he also treated the country club stock as marital property.

[4] Defendant next contends that the trial court erred by awarding the marital residence to plaintiff and making a distributive award of $23,706.82 to defendant. He argues that the court should have required a sale of the residence and a division of the proceeds. We find no merit in this contention.

"Once property has been properly designated as marital property and valued, and the court has decided in what proportions its value should be divided, there appears to be no other

guide than the discretion and good conscience of the trial judge in determining which party gets which specific property." *Andrews*, *supra*, at 235-36, 338 S.E. 2d at 814. In the present case, the trial court has identified and valued the marital property and has concluded that an equal division would not be equitable. We discern no abuse of discretion attendant upon the court's decision to award the residence to plaintiff in view of the evidence in this case.

The court's decision to award the residence to plaintiff resulted in property having a net value of $78,978.00 being distributed to her, while property passing to defendant had a net value of only $13,140.63. G.S. 50-20(e) directs the court to make a distributive award "in order to achieve equity between the parties" in those cases where a distribution in kind would be impractical, and otherwise permits a distributive award in order "to facilitate, effectuate or supplement a distribution of marital property." In the present case, the court ordered that plaintiff make a distributive award of $23,706.82 to defendant in order to reach a division of the marital property which the court had apparently concluded would be equitable, i.e., 60% to plaintiff and 40% to defendant. The distributive award was within the authority vested in the court by G.S. 50-20(e).

Defendant further contends, however, that the manner in which the trial court ordered payment of the distributive award is violative of G.S. 50-20(b)(3) which provides, in pertinent part, that a distributive award "shall not include payments that are treated as ordinary income to the recipient under the Internal Revenue Code." His contentions in this respect have merit.

The court provided that plaintiff pay the distributive award "upon the parties' youngest child reaching age 18 or at the time she graduates from high school, whichever event last occurs . . . ." The court further provided that the amount of the award would draw interest at 8% and that plaintiff would be required to secure payment of the award by executing a note secured by a second deed of trust on the residence. At the time of the divorce, the parties' youngest child was ten years of age, so that payment of the distributive award would not become due for more than seven years after the termination of the marriage.

In *Lawing, supra,* this court recognized that a distributive award under G.S. 50-20(e) could be made payable over an extended time period, the duration of which is within the sound discretion of the trial court. However, the court also held that G.S. 50-20(b)(3) limits the exercise of the trial court's discretion so that the court may not permit a distributive award to be payable over such an extended time period that the payment thereof will be treated by the Internal Revenue Service as ordinary income. *Id.* In general, I.R.S. regulations provide that gains or losses resulting from transfers "related to the cessation of the marriage" are not treated as ordinary income. Transfers occurring more than six years after the termination of the marriage, however, are presumed not to be related to the cessation of the marriage. *Id.* at 181, 344 S.E. 2d at 115, *citing* 26 C.F.R. Section 1.1041 T (1985). After surveying the applicable provisions of the Internal Revenue Code and the legislative intent behind North Carolina's Equitable Distribution Act, the *Lawing* court interpreted G.S. 50-20(b)(3)

> as authorizing the court to make distributive awards for periods of "not more than six years after the date on which the marriage ceases" except upon a showing by the *payor* spouse that legal or business impediments, or some overriding social policy, prevent completion of the distribution within the six-year period.

*Id.* at 184, 344 S.E. 2d at 116 (emphasis original). With the requirement that the payor spouse make a showing that grounds exist for extending the period of payment beyond six years is a concurrent duty on the part of the trial court to affirmatively find the existence of such grounds.

In the present case, the trial court made no findings with respect to the existence of any legal or business impediments which would prevent completion of the distributive award within six years after termination of the marriage, nor, from our review of the evidence, does it appear that plaintiff offered proof of any such impediment. Had the court ordered an immediate sale of the dwelling and a distribution of the proceeds, the writ of possession, entered as a condition of child support pursuant to the August 1984 order, would have constituted a legal impediment to the immediate distribution of the dwelling in that manner. *See Dorton v. Dorton,* 77 N.C. App. 667, 336 S.E. 2d 415 (1985).

However, the dwelling was distributed entirely to plaintiff, and, in order to achieve the total distribution found by the court to be equitable, plaintiff was ordered to pay a distributive award to defendant. The completion of payment of that distributive award is not impeded by the existence of the writ of possession, particularly in view of the trial court's order transferring title to plaintiff and requiring her to assume the outstanding indebtedness.

Finally, we observe that the provision of the order delaying plaintiff's payment of the distributive award until the youngest child's majority bears resemblance to a child support feature. We remind the trial court that equitable distribution of marital property is to be carried out without regard to child support and that, after the distribution has been determined, either party may request modification of previously ordered child support. G.S. 50-20(f).

Because the trial court made no findings which would permit completion of the payment of the distributive award beyond six years from the date the parties' marriage was terminated, we must vacate that portion of the order providing for the distributive award and remand this case for further proceedings consistent with this opinion. Except to the extent that it finds the taking of additional evidence necessary to the determination of the question of the distributive award, the trial court may, upon remand, rely upon the original record and its findings of fact and conclusions of law relating to the identification and valuation of the marital and separate property, which we specifically affirm. We do not disturb the trial court's determination that an equal division of the parties' marital property would not be equitable in this case. We recognize, however, that the trial court may, depending upon its findings upon remand with respect to a distributive award, conclude that it is necessary to modify the manner in which it has distributed the parties' marital property and we specifically confirm that any such decision is committed to the sound discretion of the trial court.

Affirmed in part, vacated in part, and remanded.

Chief Judge HEDRICK and Judge COZORT concur.