STROUD, Judge.
 

 *321
 
 Plaintiff Jeffery Lawrence Porter ("Husband") appeals from the trial court's equitable distribution order filed 14 October 2015. Husband
 
 *322
 
 argues that the trial court erred in the classification, valuation, and distribution of his 1/3 interest in Rugworks, LLC and that the court erred in awarding defendant Sheila Joy Porter ("Wife") a distributional award payable over 15 years subject to an eight percent interest rate. Although the trial court properly classified and divided Husband's business interest in Rugworks as marital property, the court's order does not properly set out the distributive award Husband must pay to Wife. Accordingly, we reverse the court's order in part and remand for the trial court to enter an order clearly establishing the distributive payment due, interest rate, and terms of payment.
 

 Facts
 

 Husband and Wife were married on 12 April 1996 and had two children during the marriage. In April 1998, Husband started a business, Rugworks, LLC ("Rugworks") with two business partners. Each partner had a 1/3 interest in the business, and Husband invested $50,000.00 from a separate retirement account to acquire his 1/3 interest. Husband worked full time with Rugworks during the marriage, while Wife worked during part of the marriage as a respiratory therapist before eventually becoming a stay-at-home mother after the birth of their second child, as she remained until the parties' separation.
 

 Husband and Wife moved to Wilmington, North Carolina, in 2006, where they had both grown up, in order to relocate a second Rugworks store from Myrtle Beach, South Carolina to Leland, North Carolina. At that time, Husband became the main operator of the relocated store and solely supported the family from this employment until he and Wife separated. Husband also formed a business known as R.W. Management Company with his Rugworks partners to purchase and lease land to Rugworks. R.W. Management Company was formed after the marriage of the parties and there was no evidence presented of any separate property invested in its acquisition.
 

 Husband and Wife separated on 2 December 2013. Husband filed his complaint on 15 January 2014 with claims for child custody and equitable distribution. Wife answered and included counterclaims for alimony, child support, child custody, and equitable distribution. All of the pending claims were tried together on three days, starting on 16 June 2015 and ending on 22 June 2015. The trial court rendered its rulings on all of the claims orally on 28 July 2015, but the trial court ultimately entered three separate orders. On 15 September 2015, the trial court entered a child custody order granting joint custody, with Husband having primary physical custody of one child and Wife having primary physical custody
 
 *323
 
 of the other.
 
 [1]
 
 A few weeks later, on 14 October 2015, the court entered an order denying Wife alimony on the basis that she had not presented sufficient proof that she was a dependent spouse.
 

 The trial court also entered its equitable distribution order on 14 October 2015. In the order, the court found that the parties had stipulated to the values of several items of personal property and financial accounts. The primary dispute in the equitable distribution portion of the trial was the valuation of Rugworks and R.W. Management. The trial court found that Husband invested $50,000.00 of separate funds into Rugworks when it was formed and that at the time of trial, the business had gross revenues around $10,000,000.00 per year. The court also found that Wife's expert was a qualified business valuation expert and noted the valuation techniques he relied on to determine revenue and profits of Rugworks, specifically the "capitalization of earnings" technique, which
 
 *403
 
 the trial court found to be "the most credible methodology." The court concluded that Husband's expert, in contrast, "expressed limited knowledge in the area of business valuations and had not conducted any of the preferred methods of business valuations on Rugworks." As for R.W. Management, the court found that the fair market value of its real estate on the date of separation was $1,400,000.00. The trial court also found that Husband's 1/3 interest in the real estate alone was $148,482.00 and that his interest in the net real estate value and receivable value was a total of $198,553.00.
 

 After considering a variety of potential distributional factors, the trial court concluded that an equal distribution would be equitable. The court found that Husband "should be required to pay a distributional payment to Wife in the amount of $348,050.00." After concluding that Husband had insufficient assets to pay this amount by making payments of over $5,000.00 per month within six years at no interest, the court instead concluded that Wife "will need to be paid her distributional payment over a period of time with interest applied at the legal rate of eight percent (8%)." The trial court's order contains a section regarding the distributional payment, which states: "In order to equalize the distribution of the parties' assets and debts, Husband shall pay a distributional payment to Wife in the amount of $348,050. Beginning October 1, 2015, Husband shall pay to Wife $3,326.15 per month for a period of 180 months to satisfy this payment." Husband timely appealed to this Court.
 

 *324
 

 Discussion
 

 Husband raises two issues on appeal regarding the trial court's equitable distribution order related to Husband's interest in Rugworks. This Court has previously explained its standard of review in equitable distribution cases as follows:
 

 On appeal, when reviewing an equitable distribution order, this Court will uphold the trial court's written findings of fact as long as they are supported by competent evidence. However, the trial court's conclusions of law are reviewed
 
 de novo
 
 . Finally, this Court reviews the trial court's actual distribution decision for abuse of discretion.
 

 Mugno v. Mugno
 
 ,
 
 205 N.C.App. 273
 
 , 276,
 
 695 S.E.2d 495
 
 , 498 (2010) (citations and quotation marks omitted).
 

 I.
 
 Classification and Valuation of Interest in Rugworks, LLC
 

 Husband first argues that the trial court erred in its classification and valuation of Husband's 1/3 interest in Rugworks. At trial, Husband's main argument regarding his interest in Rugworks was based upon valuation. Husband presented expert valuation testimony from an accountant that as of December 2013, Rugworks had a negative value. Ultimately, the trial court found that Wife's valuation expert used the most credible valuation technique. Wife's expert, Dr. Craig Galbraith, testified regarding several valuation methods he compared when determining the value of Rugworks, and he determined that it had a positive value around $1.8 million. The trial court specifically found his valuation method more credible than that presented by Husband's expert and relied on it when determining a marital value of $566,931.00 for Husband's 1/3 interest in Rugworks after deducting his $50,000.00 separate contribution. Husband's only argument on appeal regarding the valuation method adopted by the trial court is an alternative claim that the court "adopted Galbraith's 'average' of his various valuation methods" but that this calculation "appears to be a mathematical error."
 

 Although Husband seeks to treat his argument on appeal as one regarding valuation, really his arguments predominately address classification. At trial, he put all of his eggs in the valuation basket, while on appeal he asks that we consider the classification basket. Husband's arguments on appeal, including those disguised as valuation arguments, are based upon the premise that some portion of Rugworks other than the initial $50,000.00 investment should have been classified as his separate property.
 

 *325
 
 Husband now argues that as part of its improper valuation of Rugworks, the trial court erred in its
 
 classification
 
 of Husband's 1/3 interest in Rugworks. Specifically, Husband
 
 *404
 
 notes that the trial court found, in Finding of Fact No. 16, that Husband acquired his 1/3 interest in Rugworks with $50,000.00 of separate property. Husband argues that the trial court did not expressly value his interest in Rugworks either upon distribution or when it was acquired and that it should have classified Husband's 1/3 interest in Rugworks as separate property at the time of separation. The court did describe Husband's 1/3 interest, less the $50,000.00 separate contribution, as having "a total marital value of $566,931.00." Nevertheless, Husband contends that "it is evident the trial court considered the 1/3 interest to be marital property, with the exception of the $50,000 contribution of separate property. The evidence and trial court's own findings, however, establish the 1/3 interest in Rugworks is [Husband's] separate property." But Husband's argument that his 1/3 interest must be classified entirely as separate has no foundation in the evidence presented at trial.
 

 Wife argues that Husband "should be barred from asserting that Rugworks is not marital property because with the exception of the $50,000.00 initially invested by [Husband,] there was no dispute regarding the classification of the Rugworks, LLC property until this appeal." Wife notes that although Husband was obligated under
 
 N.C. Gen. Stat. § 50-21
 
 (a) (2015) to file an initial inventory listing, which is supposed to identify any property alleged to be separate, he failed to file this inventory.
 
 See
 

 N.C. Gen. Stat. § 50-21
 
 (a) ("Within 90 days after service of a claim for equitable distribution, the party who first asserts the claim shall prepare and serve upon the opposing party an equitable distribution inventory affidavit listing all property claimed by the party to be marital property
 
 and all property claimed by the party to be separate property
 
 , and the estimated date-of-separation fair market value of each item of marital and separate property." (Emphasis added)). Nor did the pretrial order addressing the issues to be decided in the equitable distribution trial identify classification of Rugworks as one of the issues for the trial court to decide. The pretrial order provided as follows:
 

 9. For the purposes of equitable distribution, the parties agree that the following are the issues to be decided by the Court:
 

 ....
 

 E.
 
 Value
 
 of Rugworks, LLC;
 

 F.
 
 Value
 
 of R.W. Management;
 

 *326
 
 (Emphasis added). On the schedules of the pretrial order setting forth the items of property and parties' contentions of values and classification, Wife contended that Rugworks and R.W. Management were marital property, designated by "M." Husband left the column for his contention as to classification blank, although he had filled in the same column for other items of property on the same page as "M." Notably, he did not fill in the classification blank with "S" for "separate." Husband notes that he did not stipulate to classification of Rugworks or R.W. Management, but Wife responds that he also did not make any direct contentions or argument regarding classification of any portion other than the initial $50,000.00 investment as separate property. In fact, he did not even argue in closing that the trial court should classify any portion of Rugworks other than the initial $50,000.00 investment as separate. Instead, his position at trial was that Rugworks had a negative value as of the date of separation.
 

 Husband responds that "[t]he question before the trial court was whether there was any increase in the value of Mr. Porter's 1/3 interest in Rugworks which could be valued as marital property." He contends that Wife has made "general assertions about stipulations-but points to no stipulation in the record. Nothing in the pretrial order indicates the classification and valuation of 'Rugworks' has been stipulated to or decided. To the contrary, Rugworks, and [Husband's] 1/3 interest, were a central issue at trial. In closing arguments to the trial court, [Husband's] trial attorney argued the 1/3 interest in Rugworks should not be distributed at all because it had no value (or really a negative value) based on the evidence from [Husband's] accountant."
 

 We recognize that to some extent classification and valuation arguments at trial were perhaps conflated, and Husband is correct that there was no stipulation as to classification,
 
 *405
 
 although the parties did stipulate to the classification and values of several items of property and to the issues to be determined by the trial court in the pretrial order. We will therefore generously assume that Husband did preserve the issue of classification for appeal, despite his failure to note it in his inventory or the pretrial order.
 

 Husband argues that a trial court's classification of property should be reviewed
 
 de novo
 
 , noting our case law that states: "Because the classification of property in an equitable distribution proceeding requires the application of legal principles, this determination is most appropriately considered a conclusion of law."
 
 Hunt v. Hunt
 
 ,
 
 112 N.C.App. 722
 
 , 729,
 
 436 S.E.2d 856
 
 , 861 (1993). More importantly, however, Husband and Wife both correctly note that this Court has long held that in an
 
 *327
 
 equitable distribution proceeding, the party seeking the specific classification has the burden of proving that classification by the preponderance of the evidence.
 
 See, e.g.
 
 ,
 
 Brackney v. Brackney
 
 ,
 
 199 N.C.App. 375
 
 , 383,
 
 682 S.E.2d 401
 
 , 406 (2009) ("In equitable distribution proceedings, the party claiming a certain classification has the burden of showing, by a preponderance of the evidence, that the property is within the claimed classification."). Moreover, "[w]hen marital efforts actively increase the value of separate property, the increase in value is marital property and is subject to distribution."
 
 Conway v. Conway
 
 ,
 
 131 N.C.App. 609
 
 , 615,
 
 508 S.E.2d 812
 
 , 817 (1998) (citations omitted). "Any increase is presumptively marital property unless it is shown to be the result of passive appreciation."
 
 Id.
 
 at 616,
 
 508 S.E.2d at 817
 
 .
 
 See also
 

 O'Brien v. O'Brien
 
 ,
 
 131 N.C.App. 411
 
 , 420,
 
 508 S.E.2d 300
 
 , 306 (1998) ("[T]he party seeking to establish that any appreciation of separate property is passive bears the burden of proving such by the preponderance of the evidence.").
 

 Here, Wife met her burden of showing that Husband's 1/3 interest in Rugworks was marital, as it was acquired during the marriage and owned on the date of separation. But the only evidence Husband presented as to a separate classification of any portion of Rugworks was the evidence of his initial $50,000.00 investment from his separate funds. To the extent that there was any evidence as to the appreciation of Husband's 1/3 interest during the marriage, it indicated that the appreciation was active, not passive. Husband was employed full-time with Rugworks during the marriage and he and his partners worked to expand the business for many years. No evidence of passive appreciation of Rugworks was presented at trial. To the contrary, the court heard testimony that Husband played a key role in managing Rugworks during the course of the marriage and that Wife became a stay-at-home mother so that Husband could devote his full attention to Rugworks. Husband and his partners testified about the long hours and hard work they put into establishing and expanding Rugworks.
 

 For example, Todd Williams, one of the Rugworks partners, described his role as well as Husband's: "It's management, managing people, managing sales." He testified that they got their business by "Reputation. Hard work. Going out and asking for it" and that they worked "as many [hours] as needed" averaging "10 or 12" hours a day. Rugworks opened new locations, and Husband moved to North Carolina to operate one of the new locations in 2006. Husband failed to meet his burden of showing that any portion of the increase in value was separate property. Husband did not even argue to the trial court that any portion of the value of Rugworks other than the initial $50,000.00 investment
 
 *328
 
 was separate; his arguments were almost exclusively related to valuation. Husband's classification basket was empty at trial, and he cannot put new eggs in it now. Other than the initial $50,000.00 investment, the trial court had no evidence upon which it could classify Husband's interest in Rugworks as separate.
 

 II.
 
 Distributive Award
 

 Next, Husband contends that the trial court erred in awarding Wife a distributive award payable over 15 years with interest at the rate of 8% on the entire amount for the entire 15 years.
 
 N.C. Gen. Stat. § 50-20
 
 (b)(3) (2015) states that " '[d]istributive award' means payments that are payable either in a
 
 *406
 
 lump sum or over a period of time in fixed amounts[.]" Husband contends that: (1) the trial court's order improperly requires him to pay 8% interest on the full amount of the award for the entire 15 years; (2) the trial court failed to find that he has the ability to pay the award as ordered, and (3) under
 
 Lawing v. Lawing
 
 ,
 
 81 N.C.App. 159
 
 , 184,
 
 344 S.E.2d 100
 
 , 116 (1986), the trial court erred by extending the period of payment beyond six years. To some extent, Husband's arguments on the distributive award are interrelated, since a change in the interest rate or term of payment also changes the amount of the monthly payments and the determination as to Husband's ability to pay. But we must address all three of these variables in the equation, since any or all may change on remand.
 

 (1) Interest on distributive award
 

 The trial court's findings of fact and decretal establish a distributive award of $348,050.00 as the amount necessary to equalize the distribution of the total value of the marital estate, and we have affirmed this ruling above. But the decretal also requires that "Beginning October 1, 2015, [Husband] shall pay to [Wife] $3,326.15 per month for a period of 180 months to satisfy this payment." If paid over the full 15 years at 8% per annum interest, the payments would total $598,707.00. The trial court's findings addressed the need to have the distributive award paid over a time period of more than six years as follows:
 

 34. In order to equalize the distributions to each party, Husband should be required to pay a distributional payment to Wife in the amount of
 
 $348,050.00.
 

 35. The payout of the distributional payment within six (6) years with no interest would result in a payment by Husband to Wife in excess of $5,000.00 per month. The
 
 *329
 
 Court finds that there are not assets from which to make this payment and a distributional payment is proper.
 

 36. In addition, there are no other assets from the marriage with which to pay any type of lump sum payment to Wife and to require Husband to do so would be a severe financial hardship. For Wife's interest in Rugworks she will need to be paid her distributional payment over a period of time with interest applied at the legal rate of eight percent (8%). If the Court does not apply an interest rate, the present value of a payout over any period of time would be substantially less than the total distributional payment. Accordingly, it is necessary to apply the legal rate to the distributional payment until paid in full.
 
 [2]
 

 Husband argues:
 

 The trial court ordered the award to be made in payments over 180 months (or 15 years) in installments of $3,326.15 per month, which expressly includes 8% interest amortized over the life of the award. In other words, [Husband] is required to pay a total amount of $598,707 over this time period. The trial court's order contains no other option for [Husband] to comply with this award other than to make these monthly payments including interest.
 

 (Footnote omitted). Although the court found that Husband does not currently have the assets to pay a distributional award in full, we agree with Husband that the award should be established as a set amount-$348,050.00-and make clear that this amount may be paid prior to the time set out in the order if Husband is able to do so, in order to avoid some interest. As noted in
 
 Lawing
 
 , discussed in further detail below, a distributive award "should be crafted to assure completion of payment as promptly as possible."
 

 Id.
 

 at 184
 
 ,
 
 344 S.E.2d at 116
 
 . The decretal as written
 
 appears
 
 to require Husband to pay the award over the entire period of 15 years in monthly payments of $3,326.15 and would not allow Husband to pay off the remaining principal balance of the award sooner, if he is able to do this.
 
 [3]
 
 Finding of
 
 *407
 
 Fact No. 36 suggests that Husband
 
 *330
 
 would be able to prepay the distributive award and thus avoid some of the interest, as it says interest would apply "until paid in full[,]" but the decretal specifically requires 180 payments of $3,326.15 and does not appear to allow prepayment. We realize that this may have simply been a poorly worded decretal provision, but in any event, Husband must be afforded the opportunity to pay the distributive award sooner and avoid payment of some of the interest. We therefore remand for the court to clarify in its order that Husband must pay the distributive award of $348,050.00 and that he shall pay this amount in monthly payments for a fixed period of time with interest on the balance remaining, but he
 
 may
 
 pay the balance remaining sooner and thus avoid payment of additional interest.
 

 Husband also argues, and we agree, that it is not clear from the order why the court used an interest rate of eight percent. On 28 July 2015, when making its oral rendition of the judgment, the trial court stated that it would be using an interest rate of 3.5 percent. The trial court stated that "the Court would order that that distributional payment be made over 180 payments at an interest rate of 3.5 years [sic] for 15 years for a monthly payment of $2,666.87." During the rendition, the trial court answered some questions from counsel about the ruling and reiterated the 3.5% rate:
 

 [THE COURT:] And do you need further direction on-because you've submitted the order?
 

 [Wife's trial counsel]: No, ma'am. No. I know what you're saying. That's fine. You said 3.5 percent, I think; is that right?
 

 THE COURT: 3.5 percent.
 

 We realize that the written order controls over the oral rendition,
 
 see, e.g.
 
 ,
 
 In re O.D.S.
 
 , --- N.C.App. ----,
 
 786 S.E.2d 410
 
 , 417 (2016) ("[P]rior opinions of this Court have made clear that, as a general proposition, the written and entered order or judgment controls over an oral rendition of that order or judgment."),
 
 disc. review denied
 
 ,
 
 369 N.C. 43
 
 ,
 
 792 S.E.2d 504
 
 (2016) ; and the trial court may have fully intended to change the interest rate and monthly payment to the amounts set forth in the written order, but nothing in the court's order explains why the interest rate used in the written order was eight percent, other than that
 
 *331
 
 the order noted that this is "the legal rate."
 
 [4]
 
 It is possible that the trial court decided after its oral rendition to use eight percent instead of 3.5 percent, but it is also possible that eight percent was included inadvertently because it was the usual "legal rate" at that time.
 
 N.C. Gen. Stat. § 24-1
 
 . Wife argues simply that a rate of eight percent has been allowed in other cases, such as
 
 Lawing
 
 ,
 
 81 N.C.App. at 178
 
 ,
 
 344 S.E.2d at
 
 113 ; but the fact that this Court affirmed an order with a particular interest rate in one case does not mean that the interest rate has been approved for all cases, or that all awards require an interest payment. This Court has long held that "the decision of whether to order the payment of interest on a distributive award is one that lies within the discretion of the trial judge."
 
 Mrozek v. Mrozek
 
 ,
 
 129 N.C.App. 43
 
 , 49,
 
 496 S.E.2d 836
 
 , 840 (1998). And we have ruled on orders with other interest rates as well.
 
 See, e.g.
 
 ,
 
 Becker v. Becker
 
 ,
 
 127 N.C.App. 409
 
 , 413,
 
 489 S.E.2d 909
 
 , 913 (1997) (finding abuse of discretion due to unduly delay of distributive award in matter where trial court ordered the plaintiff to pay distributive award "plus interest at the rate of seven percent per annum").
 

 With each equitable distribution order, the trial court has to consider the circumstances in that particular case, the current economic conditions, and the ability of
 
 *408
 
 the payor to pay a distributive award under
 
 N.C. Gen. Stat. § 50-20
 
 (e). The combination of the interest rate and the term of payment will determine the monthly payments, and the trial court must consider whether the payor has the ability to pay those monthly payments.
 
 See
 

 Lawing
 
 ,
 
 81 N.C.App. at 179
 
 ,
 
 344 S.E.2d at 113
 
 ("[
 
 N.C. Gen. Stat. § 50-20
 
 (e) ] clearly recognizes that the court may make the distributive award payable over an extended period. Since G.S. 50-20(e) does not limit the duration of the time period for payment, nothing else appearing, the structure and timing of payment of the award would rest with the discretion of the trial judge."). As the decision is ultimately up to the discretion of the court,
 
 Mrozek
 
 ,
 
 129 N.C.App. at 49
 
 ,
 
 496 S.E.2d at 840
 
 , the trial court may decide to adjust the interest rate or the payment term or both to bring the monthly payments to an appropriate level. In this case, the change in interest rate from 3.5% to 8% per annum increased the amount of Husband's monthly payments by $659.28; this amount is not insignificant and is also relevant to Husband's arguments as to his ability to pay. On remand, the court should clarify the interest
 
 *332
 
 rate and the corresponding monthly payment, with Husband permitted to pay the remaining balance of the distributive award sooner than the full term of the payments.
 

 We also recognize that another possible reason for any confusion or ambiguity in the order could be the fact that the trial court heard both alimony and equitable distribution in the same trial but entered two separate orders on the same day-one denying Wife's alimony claim and one granting equitable distribution. While neither order specifically references to or relies upon the other, they are interrelated. Neither Husband nor Wife has appealed the alimony order, so we cannot disturb it; but in the alimony order, the trial court noted:
 

 The Court has considered
 
 the distributional payment and child support obligation
 
 that will be paid by the Plaintiff to the Defendant as well as factors set forth in N.C.G.S § 50-16.3 (A) in its decision with regard to an award of alimony.
 

 (Emphasis added).
 

 There may have been other reasons the trial court did not award Wife alimony, since one of the factors noted by the alimony order was Wife's marital misconduct, but the alimony order shows that the trial court's denial of alimony was ultimately based on its determination that Wife was not a dependent spouse, as indicated in one of the two conclusions of law made in the order. The trial court found:
 

 2. Wife has not presented sufficient proof that she is a dependent spouse as that term is defined by the North Carolina General Statutes who is actually dependent upon Husband for her maintenance and support and is substantially in need of maintenance and support from Husband.
 

 And the trial court determined that Wife was not a dependent spouse in need of alimony at least in part
 
 because of
 
 the distributional payments in the equitable distribution order-in the specific amount of $3,326.15-and perhaps child support established in another order.
 
 [5]
 
 When we look
 
 *333
 
 at the two orders in our record together, it seems possible that the trial court may have found Wife to be a dependent spouse and ordered that Husband pay alimony of some amount
 
 but for
 
 the distributive award in the amount and for the time period set forth in the equitable distribution order. Husband's brief recognizes this possibility, as he argues, "the award appears designed to ensure [Wife] a stream of income for as long as possible including a high interest rate, which effectively replaces the alimony payments she was denied in the alimony order entered the same day on the basis she was not a dependent spouse who needed any support." On remand, the trial court thus has the discretion to reconsider the manner of payment of the distributive award, while considering that Wife will not receive any alimony
 
 *409
 
 since the order denying alimony has not been appealed.
 

 (2) Ability to pay distributive award in monthly payments
 

 Husband also argues that the trial court failed to consider his ability to pay the distributive award and specifically that he is unable to pay either the lump sum of $348,050.00 or $3,326.15 per month. Husband argues:
 

 The trial court made no finding [Husband] has the ability to pay this amount nor did the trial court identify a source of funds by which [Husband] could pay this award. The only finding the trial court made was its finding [Husband] did not have the ability to pay the distributive award over 6 years even without interest.
 

 The trial court's actual finding in the equitable distribution order as to Husband's ability to pay was the following:
 

 35. The payout of the distributional payment within six (6) years with no interest would result in a payment by Husband to Wife in excess of $5,000.00 per month. The Court finds that there are not assets from which to make this payment and a distributional payment is proper.
 

 The trial court's finding, particularly if read in context with the remainder of the order, does acknowledge, albeit indirectly, that Husband did not have the ability to pay $348,050.00 immediately
 
 and
 
 that he did not have the ability to pay monthly payments "in excess of $5,000.00 per month[,]" which would be the amount required to pay the entire award within six years. The findings did not directly address Husband's ability to pay the distributive payments of $3,326.15 per month as ordered (or $2,666.87, as stated in the rendition), other than to order the payments over a longer period of time to make the monthly payments lower than
 
 *334
 
 $5,000.00 per month. In fact, the equitable distribution order did not address Husband's income or expenses at all. Again, this problem may arise from the fact that the alimony order entered on the same day did include one finding regarding Husband's income and expenses:
 

 [Husband's] currently [sic] gross income is $10,400.00 per month but has presented no evidence with regard to his deductions or his expenses on a monthly basis.
 
 [6]
 

 Since the alimony order denied alimony, perhaps the trial court determined there was no need for the trial court to address Husband's earnings or expenses in more detail; and even if those things should have been addressed, the alimony order was not appealed. Furthermore, we note that the trial court may have addressed the income and expenses of the parties in more detail in a child support order, as alluded to in the alimony order, but we do not have the benefit of a child support order in our record. In short, on the record before us we cannot determine how the trial court evaluated Husband's ability to pay the monthly payment on the distributive award, and as discussed above, on remand it is possible that the monthly amount may be revised if the interest rate or term of payment is revised. We therefore must remand for additional findings regarding Husband's ability to pay the distributive award as directed by the trial court on remand, whether in the same amount as previously ordered in the order on appeal or in a different amount.
 

 (3) Extension of payment of distributive award beyond 6 years
 

 Husband argues that the 15 year period for payment of the distributive award is in violation of
 
 N.C. Gen. Stat. § 50-20
 
 (b)(3), which provides:
 

 (3) "Distributive award" means payments that are payable either in a lump sum or over a period of time in fixed amounts, but shall not include alimony payments or other similar payments for support and maintenance which are treated as ordinary income to the recipient under the Internal Revenue Code.
 

 *410
 
 Husband relies upon
 
 Lawing
 
 and argues that the trial court erred because that case holds "that a court's authority to make distributive awards is limited and that a court may not enter a distributive award that will be treated as ordinary income under the
 
 *335
 
 Internal Revenue Code."
 
 81 N.C.App. at 179
 
 ,
 
 344 S.E.2d at 114
 
 . Husband argues that the trial court's "inclusion of the taxable interest component as an express part of the distributive award in this case is error, and this Court should reverse the trial court's distributive award and remand the matter with instructions to the trial court to reconsider its distributive award and strike the taxable interest component." We have already determined above that the trial court must consider the interest as well as the schedule and payments for the distributive award, but as the period over which the distributive award will be paid must be addressed on remand, we must also address this issue. Husband asks this Court to remand to "reconsider" the distributive award and "strike the taxable interest component[,]" but his arguments do not support this particular relief on remand.
 

 Wife argues that
 

 [a] trial court is not prohibited from entering a payment structure of this nature as long as the appropriate findings are made. In the instant case, there were not sufficient assets in the marital estate that would allow [Wife] to recoup the distributive award immediately, and [Husband] did not have sufficient assets in order to make the required payment within six years. A payment of this magnitude within the six year time frame would require a payment in excess of $5,000.00 per month, which would result in severe financial hardship to [Husband]. The inability to pay outside of this payment structure is admitted by [Husband] in [his brief.] Pursuant to
 
 Lawing
 
 , because the trial court made findings regarding [Husband's] inability to pay the distributive award within the six year time frame, the trial court did not err in entering a payment schedule of this nature.
 

 (Record citations omitted).
 

 In
 
 Lawing
 
 , the defendant-husband was ordered to pay a distributive award to plaintiff-wife of $245,000.00, with $25,000.00 due immediately and the remainder in payment of $1,000.00 per month with interest at "8% per annum on the balance" over 220 months, or 18.3 years.
 

 Id.
 

 at 178
 
 ,
 
 344 S.E.2d at 113
 
 . On appeal, the plaintiff-wife argued that this award was "contrary to the statutory definition and authorization, and that it inequitably makes her dependent on defendant over an inordinately lengthy period."
 
 Id
 
 . The
 
 Lawing
 
 court held that the trial court has authority to make a distributive award which is payable over a period of more than six years, but only
 

 *336
 
 upon a showing by the
 
 payor
 
 spouse that legal or business impediments, or some overriding social policy, prevent completion of the distribution within the six-year period. Awards for periods longer than six years, if necessary, should be crafted to assure completion of payment as promptly as possible. This will serve both statutory goals: affording the recipient's share non-recognition treatment under the Code, and fairly wrapping up the marital affairs as quickly and certainly as possible.
 

 Id.
 

 at 184
 
 ,
 
 344 S.E.2d at 116
 
 (citation omitted). This Court held that the payment schedule was "erroneous as a
 
 matter of law
 
 and must be vacated" because the defendant-husband-the payor spouse-failed to make any "showing of legal or business impediments to an earlier distribution[.]"
 

 Id.
 

 Cases since
 
 Lawing
 
 have reiterated the requirement that if a distributive award will extend beyond six years, the payor spouse must show, and the trial court must find:
 

 legal or business impediments, or some overriding social policy, prevent completion of the distribution within the six-year period. Our court later held the trial court has a concurrent duty to affirmatively find the existence of these grounds for extending the payment period beyond six years. ... In addition, we have also stated that awards for periods longer than six years, if necessary, should be crafted to assure completion of payment as promptly as possible.
 

 Becker
 
 ,
 
 127 N.C.App. at 413
 
 ,
 
 489 S.E.2d at 912-13
 
 (citations, quotation marks, and ellipses omitted).
 

 *411
 
 In
 
 Smith v. Smith
 
 ,
 
 111 N.C.App. 460
 
 ,
 
 433 S.E.2d 196
 
 (1993),
 
 rev'd in part on other grounds
 
 ,
 
 336 N.C. 575
 
 ,
 
 444 S.E.2d 420
 
 (1994), this Court affirmed an order which demonstrates the type of findings needed to order a distributive award payable over a period beyond six years:
 

 The court found, among its numerous detailed findings made concerning the distributive award, that the total amount of the award could not be paid within the six year period after the date of the parties' divorce because of: (1) certain legal impediments to transfer; (2) business impediments to transfer; (3) disputes concerning the value of the property owned at the time of the cessation
 
 *337
 
 of the marriage; and (4) "other factors." As the "other factors" found by the court preventing payment of the award within the six year period, the court noted that defendant did not have the present liquidity or ability to pay the award within that time, and that a reasonable social policy does not require the forced dissolution and liquidation of a substantial marital estate in order to effectuate complete payment of a distributive award within a six year period.
 

 The court further addressed in detail defendant's ability to pay the distributive award as ordered. The court found that defendant has the ability to make substantial monthly payments and to pay the distributive award within the time required by the court; that given defendant's age (63 when the judgment was entered), a reasonable period in which to accomplish transfer of the distributive award as promptly as possible is ten years, or 120 months; and that this period of time for payment of the award is a reasonable period that assures completion of the payment as promptly as possible under the circumstances.
 

 Id.
 

 at 516
 
 ,
 
 433 S.E.2d at 229-30
 
 .
 

 These cases establish that the burden is upon the payor-spouse-here, Husband-to make a "showing ... that legal or business impediments, or some overriding social policy, prevent completion of the distribution within the six-year period."
 
 Lawing
 
 ,
 
 81 N.C.App. at 184
 
 ,
 
 344 S.E.2d at 116
 
 . In addition, the trial court must make findings as to the facts which justify a longer period of time for completion of the distribution.
 
 See, e.g.
 
 ,
 
 Harris v. Harris
 
 ,
 
 84 N.C.App. 353
 
 , 364,
 
 352 S.E.2d 869
 
 , 876 (1987) ("Because the trial court made no findings which would permit completion of the payment of the distributive award beyond six years from the date the parties' marriage was terminated, we must vacate that portion of the order providing for the distributive award and remand this case for further proceedings consistent with this opinion.").
 
 Lawing
 
 seems to say that where the payor-spouse has failed to make this evidentiary showing, the trial court erred as a matter of law in ordering a delayed payment schedule for the distributive award and thus vacated that portion of the order.
 
 81 N.C.App. at 184
 
 ,
 
 344 S.E.2d at 116
 
 . Later cases seem to soften the requirements upon the payor-spouse a bit, as in
 
 Becker
 
 , where this Court reversed and remanded the case to the trial court "for reassessment of its decision to order an unequal division without considering the improper factor listed in finding 13(e)" and held only that "[a]n abuse of discretion occurred in ordering an unduly
 
 *338
 
 delayed distributive award[,]"
 
 127 N.C.App. at 412, 414
 
 ,
 
 489 S.E.2d at 912
 
 , 913 ; and in
 
 Harris
 
 , where this Court noted that the trial court, in its discretion on remand, could find it necessary to hear additional evidence to address the payment schedule for the distributive award.
 
 84 N.C.App. at 364
 
 ,
 
 352 S.E.2d at 876
 
 .
 

 In this case, Husband made no showing and no argument regarding how the distributive payments should be done or over what time period. In fact, his closing argument was based on the premise that Wife would owe a distributive award to him, since Rugworks-a marital asset-had a negative value, although he acknowledged that she would be unable to pay a distributive award.
 
 [7]
 
 Yet Wife's arguments before the trial court and this Court concede that Husband would be
 
 *412
 
 unable to pay the award within six years, the evidence supported the finding that he would be unable to pay within six years, and thus the trial court properly ordered the extended payment period. Wife's position on appeal is also somewhat different than her position at trial, where she argued that if Husband was required to pay over 15 years, the payments would be about $2,000.00 per month:
 

 I just wanted to point out that if you had it paid out over six years, the present value of that, even though I'm asking for 376, is actually $288,000.00. If it's paid out over 15 years, I'm asking for 376, at a discount rate of 4.5 percent, present day is 194,388. So I get that he-he can't write a check. I get that. So-but there-and I'm-I'll be glad to hand these up to the Court, if the Court would like to see them. ...
 

 ....
 

 .... So the fact of the matter is, is that 15-year payment results in a payment of about two grand a month. I mean, you can just divide it or you can run an interest rate. We all know how to do that and amortize whatever is owed.
 

 Thus, both parties agreed that Husband would be unable to pay the distributive award immediately or even within six years, so an extended payment schedule was necessary. The trial court found as
 
 *339
 
 much, although the finding of fact is somewhat cursory. We have already determined that we must vacate the order and remand for the trial court to make findings of fact and a new order regarding the proper interest rate and addressing the Husband's ability to pay the resulting distributive payments, which may well change the time period over which the payments are ordered. As in
 
 Harris
 
 , on remand the trial court may "rely upon the original record and its findings of fact and conclusions of law relating to the identification and valuation of the marital and separate property, which we specifically affirm[,]" but has the discretion to allow additional evidence on remand "to the extent that it finds the taking of additional evidence necessary to the determination of the question of the distributive award[.]"
 
 84 N.C.App. at 364
 
 ,
 
 352 S.E.2d at 876
 
 . We also "recognize, however, that the trial court may, depending upon its findings upon remand with respect to a distributive award, conclude that it is necessary to modify the manner in which it has distributed the parties' marital property and we specifically confirm that any such decision is committed to the sound discretion of the trial court."
 

 Id.
 

 Conclusion
 

 Accordingly, while we conclude that the trial court properly classified Husband's interest in Rugworks as marital property and that the valuation is supported by the evidence, we also find that the court's order does not properly set out the distributive award amount. Accordingly, we reverse the court's order and remand so that the trial court may enter an order clearly establishing the term of payment, interest rate, and monthly payments for the distributional award and making it clear that Husband will be permitted to prepay the remaining balance of the award due prior to expiration of the full term.
 

 AFFIRMED IN PART; REVERSED AND REMANDED IN PART.
 

 Judges McCULLOUGH and ZACHARY concur.
 

 [1]
 

 This order did not address child support. On 2 October 2015, Wife filed a motion requesting that the trial court establish child support in accordance with the North Carolina Child Support Guidelines.
 

 [2]
 

 Although the trial court referred to the award as a "distributional payment," we take this to mean the same as a distributive award under
 
 N.C. Gen. Stat. § 50-20
 
 (b)(3).
 

 [3]
 

 In addition, in the oral rendition of the judgment, the trial court stated that the monthly payments would be $2,666.87, which would result in a total sum paid of $480,036.60, based upon the interest rate of 3.5% which the trial court noted at that time. This rendition was also generally consistent with the distributive award payment schedule requested by Wife's counsel in his closing argument. ("So the fact of the matter is, is that 15-year payment results in a payment of about two grand a month.").
 

 [4]
 

 N.C. Gen. Stat. § 24-1
 
 (2015), entitled "Legal rate is eight percent[,]" states: "The legal rate of interest shall be eight percent (8%) per annum for such time as interest may accrue, and no more."
 

 Id.
 

 This statute was later amended in 2016, but the amended version would not have been in effect at the time the trial court entered its order on 14 October 2015.
 
 See
 
 2016 N.C. Sess Law 2016-90 (eff. July 11, 2016) (adding the phrase "Except as otherwise provided in G.S. 136-113," to the statute).
 

 [5]
 

 Our record does not include a child support order, although Wife had requested that a child support order be entered. Since Husband's income was far more than Wife's income, it would appear that Husband would have had some child support obligation to Wife, although our record does not reveal what the amount would be. We also note that by the time the trial court receives this case on remand, the parties' oldest child will be age 18 and the younger will be age 16, so the child support obligation may be different than it was at the time of the order on appeal.
 

 [6]
 

 We note that the distributive payment as ordered would be around 32% of Husband's
 
 gross
 
 income before deduction of any taxes or living expenses, and he perhaps also pays some child support, according to the alimony order. Based on these numbers, Husband's argument of inability to pay is not unreasonable.
 

 [7]
 

 "And so what I would ask the Court to do is to find that the value of the business has a net value in negative numbers and that it's just impossible to distribute, because she doesn't have the money to make it up."